OPINION OF THE COURT
John A. Monteleone, J.
Petitioner, the Board of Education of the City of New York (hereinafter also referred to as the board), moves for an order pursuant to CPLR 2304 quashing a subpoena duces tecum (hereinafter subpoena) dated March 15, 1978 which was served upon the board. The subpoena was issued by the respondent *576 Goldin, Comptroller of the City of New York (hereinafter Comptroller).
The Comptroller cross-moves for an order pursuant to CPLR 2308 (subd [b]) directing the board’s president to comply with the subpoena.
The subpoena, addressed to the board’s president, commands the production "for review and inspection” of "all records and documents in your possession or control pertaining to the New York City Board of Education’s vocational education program”. The language of the subpoena makes clear that the material to be produced is inclusive of, "but not limited to,” 13 categories of documents and records as therein listed. These categories include, among others, the following: the complete personnel files for all vocational high school teachers for certain specified years; "[a]ll documents relating to the retraining and updating of all shop teachers in all New York City High Schools engaged in providing vocational training”; and "[a]ll documents relating to curriculum planning and design for the years 1970-71 through 1977-78 for New York City High Schools engaged in providing vocational education”. The call for production of the records and documents referred to in the categories described in the subpoena concludes with a demand for "[a]ll other records which pertain to vocational education in New York City’s High Schools.”
The submitted papers on the instant motion and cross motion clearly establish that the acknowledged general purpose to be subserved by the subpoena is, as stated in a letter dated March 13, 1978 from the Comptroller to the board’s president, quoting subdivision d of section 93 of the New York City Charter, "to determine whether funds are being expended or utilized efficiently and economically and whether the desired goals, results or benefits [of the board’s programs] are being achieved.” The specific aspects of the Comptroller’s proposed inquiry, with respect to which the production of the material mentioned in the subpoena is sought, are reflected in the statement made in the Comptroller’s afore-mentioned letter that "[w]e expect, among other things, to ask recent graduates of vocational high schools if they are currently employed in the fields for which they were trained; we will compare the curriculum offered by vocational high schools to the current labor market to determine its relevancy; we will examine equipment to see if it reflects current job conditions, or if it is out-dated and inappropriate; we will éxamine person *577 nel practices to determine if personnel are periodically retrained so that the staff is capable of providing an education that is relevant to the job market of today and tomorrow.”
The board’s motion to quash rests upon its contention that the Comptroller lacks authority to require from the board by way of subpoena the production, for the hereinabove stated purposes, of records, documents, and other papers involving matters which are strictly and essentially educational or pedagogic. This position is based upon the long-standing public policy in this State of barring interference by municipalities or their officials, with strictly educational matters entrusted to local boards of education, and on the board’s contention that none of the statutory enactments or judicial decisions on which the Comptroller relies furnishes support for his view that they authorize or permit an investigation into such matters through compulsory process.
The board maintains that the power and authority of the Comptroller in relation to the board is defined and limited by subdivision 7 of section 2590-m of the New York State Education Law, which provides that "[t]he comptroller of the city of New York shall audit the accounts of the city board and each community board.” The board claims that although it offered to co-operate with the Comptroller in the conduct of an audit of its accounts pursuant to subdivision 7 of section 2590-m, the Comptroller has disclaimed any intent to conduct an audit of the accounts of the board and has unlawfully asserted the right, in purported reliance upon subdivision d of section 93 of the City Charter, to exercise his powers for the broad purpose specified in subdivision d of section 93.
The papers submitted to the court in this controversy amply demonstrate that the Comptroller’s claim that he is authorized to exercise the power of subpoena with respect to the matters described or otherwise stated in his subpoena basically derives from his reliance on subdivision d of section 93 of the City Charter. Subdivision d of section 93 reads in pertinent part as follows: "The comptroller shall audit the operations and programs of city agencies to determine whether funds are being expended or utilized efficiently and economically and whether the desired goals, results or benefits of agency programs are being achieved.”
The Comptroller also relies, as authority for issuance of the subpoena, upon subdivision b of section 93 of the charter, which states that the Comptroller "shall have power to inves *578 tigate all matters relating to or affecting the finances of the city, including without limitation the performance of contracts and the receipt and expenditure of city funds, and for such purpose he shall have power to require the attendance and examine and take the testimony under oath of such persons as he may deem necessary.” The Comptroller in addition invokes section 93 (subd c, par [3]), which empowers the Comptroller to "audit the expenditure of city funds by any public or private agency that receives such funds from the city.” The Comptroller also adverts to subdivision a of section 93, which authorizes the Comptroller to make "such recommendations, comments and criticisms in regard to the operations, fiscal policies and financial transactions of the city as he may deem advisable in the public interest.” The Comptroller goes so far as to maintain that his power to conduct an audit of the board in all of the far-ranging aspects reflected in the subpoena is recognized in subdivision 7 of section 2590-m of the Education Law, hereinabove referred to, a view which finds no support in the express language therein contained, which only authorizes and directs an audit of the "accounts” of the board.. The Comptroller additionally cites section 20 of the General City Law of the State of New York and, specifically, subdivisions 21 and 23 thereof. However, it is to be noted on this score that the grant of power to the city "[t]o investigate and inquire into all matters of concern to the city or its inhabitants, and to require and enforce by subpoena the attendance of witnesses at such investigations” (subd 21), and "[t]o exercise all powers necessary and proper for carrying into execution the powers granted to the city” (subd 23), is expressly stated in the opening sentence of section 20 to be "[s]ubject to the constitution and general laws of this state”.
Basically, the Comptroller’s claim of a right to require the production of records and other material for the purposes herein indicated rests, as hereinabove stated, upon the provisions of section 93 of the City Charter and, more particularly, upon the provisions of subdivision d of section 93. The Comptroller submits that the provisions of subdivision d of section 93 which empower him to audit the operations and programs of "city agencies” for the broad purpose therein stated are applicable to the programs and operations of the board since, according to the Comptroller, the board is a city agency within the meaning of section 93 of the charter and, in this connection, quotes from subdivision 2 of section 1150 of the *579 charter which defines the term "agency” to include "[any] agency of government, the expenses of which are paid in whole or in part from the city treasury.”
The Comptroller asserts, moreover, that the board is seeking an appropriation for the fiscal year 1979 which is substantially greater than the sum that the city will be required to appropriate to the board under the stipulation of settlement between the city and the board resolving their differences under the Stavisky-Goodman law (Education Law, § 2576, subd 5), and that it is especially important during this period of fiscal crisis confronting the city that, pursuant to "obligation” imposed on him by subdivision a of section 93 of the charter to make recommendations, comments and criticisms in regard to the city’s operations, fiscal policies and financial transactions, the Comptroller furnish the City Council and the Board of Estimate with information and recommendations that will facilitate intelligent consideration of the board of education’s request for appropriations in excess of the sum mandated by the stipulation of settlement.
Finally, it is contended by the Comptroller that any objection to the scope of the subpoena or as to any particular items sought therein is meritless, since the requested documents are clearly material and relevant to the authorized purpose for which an audit can be conducted by the Comptroller as stated in subdivision d of section 93 of the charter.
The resolution of the instant controversy rests fundamentally upon a two-fold determination of a question of fact and of an issue of law. The factual question is whether the Comptroller, in calling for production of the records, documents and other material mentioned in the subpoena is seeking, whether purposefully or in effect, to inquire into or concern himself with matters entrusted to the board that are of a strictly educational or pedagogic nature. If this be the fact, the legal issue which comes to the fore for consideration and determination is whether the Comptroller has the inherent power or is otherwise authorized by law to utilize the power of subpoena to inquire into such matters.
The court finds no difficulty in answering the factual question in the affirmative, since it clearly appears that in the present case the Comptroller is attempting to exercise his subpoena powers with respect to matters, many of which are intrinsically and strictly involved in the educational process. There is no other way to describe the Comptroller’s attempt to *580 inquire into all matters pertaining to vocational education in New York City’s high schools, embracing in broad fashion the board’s vocational education programs and operations. Indeed, nowhere in the papers submitted in this controversy does the Comptroller purport or attempt to claim that matters of strictly educational import which are involved in the board’s programs and operations are not a subject of the inquiry.
 Turning next to the issue of law which is at the heart of this controversy, a reference to well-settled controlling principles respecting the sui generis character of boards of education vis-á-vis the local municipalities which they serve, is in order. These principles which have been stated time and again find expression in Matter of Divisich v Marshall (281 NY 170, 173), wherein it is declared that "[i]f there be one public policy well-established in this State it is that public education shall be beyond control by municipalities and politics. The Board of Education of the City of New York is not a department of the city government, it is an independent corporate body and may sue and be sued in its corporate name [citations.] As early as 1921 (Matter of Emerson v. Buck, 230 N. Y. 380) we decided that while the municipality must make appropriations of money to run the schools, the expenditure of that money when once appropriated vested solely in the Educational Board.” The court, in Divisich, then went on to quote with evident approval the views expressed in Matter of Fuhrmann v Graves (235 NY 77, 82) wherein the court said: "The intent of the legislature in enacting the Education Law is clear. It imposes upon boards of education, as separate corporate bodies representing the state, the responsibility of furnishing an efficient system of public education (People ex rel. Wells & Newton Co. v. Craig, 232 N. Y. 125), and in this respect they are not subject to or controlled by the city authorities. In order to enable such boards to properly discharge the duties thus imposed, they are clothed with authority to act independently of the city authorities. As to when, how and where the amounts placed at their disposal shall be disbursed, each board exercises an independent judgment, uncontrolled by and in no respect interfered with or influenced by the city authorities.”
It is doubtless true that although the board is a State agency, it is not wholly independent of municipal action, in that it is subject to municipal control in matters not strictly educational or pedagogic (see Matter of Hirshfield v Cook, 227 *581 NY 297, 304; Matter of Maloff v City Comm. on Human Rights, 38 NY2d 329, 332). "[T]he distinction is this: 'While the educational affairs in each city are under the general management and control of the board of education, such board is subject to municipal control in matters not strictly educational or pedagogic’” (Maloff, supra, p 332, quoting from Matter of Hirschfield v Cook and citing Matter of Daniman v Board of Educ. of City of N. Y., 306 NY 532, 542). The clear implication, conversely, is that matters which are strictly educational or pedagogic are protected from control and interference by the local municipality. This is clearly indicated in Maloff (supra), involving a charge of discrimination in respect to teacher ratings, wherein the court declared (pp 332-333) that "discrimination in the school system is, in the broadest sense, an educational affair, and the board clearly has authority to deal with it. But it has never been considered 'strictly educational or pedagogic’ so as to be a matter within the board’s exclusive jurisdiction” (citing Matter of Board of Higher Educ. of City of N. Y. v Carter, 14 NY2d 138). The independence of boards of education in strictly educational or pedagogic matters was earlier given supportive expression in Matter of Daniman v Board of Educ. of City of N. Y. (supra, p 542), where the court noted that "[w]e have, in many cases involving teachers, written that in matters strictly educational or pedagogic a board of education is not a department of the city government, but an independent public body; that public education is a State and not a municipal function and that it is the policy of the State to separate matters of public education from the control of municipal government.”
Matter of Hirschfield v Cook (supra), from which the Comptroller seeks, in the instant case, to glean support for his claim of right to serve the subpoena upon the board, did not depart from the principle that a board of education is not subject to municipal authorities in matters strictly educational or pedagogic. This was made clear in that very case, as is indicated by the authorities hereinabove cited, even though the court in that case upheld the power of the Commissioner of Accounts of the City of New York to examine an auditor of the Board of Education under oath concerning the expenditures and the financial needs of the board. That case arose out of a Board of Education request to the then-existing city Board of Estimate and Apportionment for additional appropriations of funds to meet liabilities alleged to have been incur *582 red by the Board of Education in the year 1918 in excess of appropriations made for it for that year. The Board of Estimate and Apportionment requested the Board of Education to furnish the facts and particulars in detail with respect to such alleged liabilities and the necessity for an additional appropriation to cover said liabilities. When the Board of Education failed to furnish the information thus sought, the Commissioner of Accounts was directed by the Mayor to examine the accounts of the Board of Education. The Board of Education’s auditor, under the advice and direction of the State Commissioner of Education, refused to obey a subpoena calling for his appearance and testimony under oath. In sustaining the issuance of a warrant of attachment to compel the auditor’s attendance for examination by the Commissioner of Accounts, the court, notwithstanding the independence of boards of education in matters strictly educational or pedagogic, stated (227 NY 297, 309) that "[the Commissioner of Accounts] is entitled to conduct such examination for the purpose of ascertaining the financial condition of the city and the needs of the public schools therein, if any, over and above the amount that must be appropriated simply on the request of the board of education.” True, that the court continued (pp 309-310) as follows: "If the state through its legislature intends to make the board of education of the city wholly independent of municipal action and prevent the city or the officers and boards thereof from asserting any authority relating to matters connected with the public schools and the determination of the expenditures therefor, it should be stated by it in such clear language that its intention is 'unmistakable.’ ” The position reflected in the foregoing view is, however, nothing more or less than that not all matters connected with the public schools and the determination of expenditures for public education involve matters "strictly educational or pedagogic” as to which municipal action or control is barred. It is one thing for a municipal official to conduct an inquiry for the purpose of determining the financial needs of the Board of Education, as in Hirschfield; and, in this connection, it is not inapposite to note that the court in Matter of Fuhrmann v Graves (235 NY 77, 82, supra), in stressing the independence of judgment accorded to boards of education as to the manner in which the funds appropriated to their use shall be disbursed, did point out that "the boards cannot incur a liability or an expense chargeable against the funds under their con *583 trol except for educational purposes, and this only to the extent of the amounts placed at their disposal.”
A far different situation, however, is presented where a dominant purpose of the inquiry by the municipal officer is to evaluate critically the programs and operations of the board and the adequacy of performance of the board’s administrative and teaching staffs in matters coming strictly within the educational and pedagogic domains. The Hirschfield case does not stand as an authority for permitting an inquiry of the latter kind by a municipal official.
Similarly, the Comptroller’s reliance in the instant case upon statutory grants of power to the cities or their officials, to which reference has hereinbefore been made, must be viewed and construed as applying, vis-á-vis the board, only to such matters as cannot reasonably be deemed strictly educational or pedagogic.
The continuing validity of the distinction between matters of strictly educational or pedagogic concern and those which fall outside of or transcend such matters, in determining the limits of the Comptroller’s authority with respect to the board’s programs and activities, impels a conclusion that is dispositive of the legal issue here presented. It is this: The statutory provisions invoked by the Comptroller, including subdivision d of section 93 of the City Charter, may not be given a construction authorizing the exercise of inquisitorial power, enforceable by way of subpoena, in areas of the board’s activities which are as a matter of public policy, excluded from interference or control by the local municipal authorities.
Assertion of authority to compel the board to submit to examination by the Comptroller’s office, if permitted, would in effect infringe upon the board’s right to exercise independence of judgment in strictly educational or pedagogic matters, and would serve to inhibit the exercise of judgment and freedom of action by the board in matters entrusted to their exclusive jurisdiction.
Accordingly, the board’s motion to quash the subpoena is granted and the Comptroller’s cross motion is denied. The foregoing conclusion and determination of this court is not to be construed as restricting the right of the Comptroller to examine into any and all matters that are not "strictly educational or pedagogic” nor as a declaration that all of the records, documents and other material mentioned or referred to in the subpoena relate to matters beyond the inquisitorial *584 power of the Comptroller. However, since it clearly appears to the court that production of the material referred to in the subpoena was intended to serve purposes outside the purview of the Comptroller’s lawful concern, it would not be feasible or desirable or otherwise serve a useful purpose to winnow out the objectionable features and permit, at this time, the production of such of the records, documents and other papers referred to in the subpoena as may deal with matters within the Comptroller’s proper area of concern.