OPINION OF THE COURT
Meyer, J.
Does section 93 of the New York City Charter empower the comptroller of the city to issue a subpoena duces tecum for books and records of a corporation which for some six years prior to the date of the subpoena has transported handicapped children under a contract with the board of education of the city? On the comptroller’s petition for an order pursuant to CPLR 2308 compelling compliance Special Term held that it did and commanded compliance. The Appellate Division, two Justices dissenting, reversed and denied the application. The order of the Appellate Division should be reversed, with costs, and the judgment of the Supreme Court should be reinstated.
New York City’s Comptroller is authorized by section 93 of the City Charter to make recommendations concerning the operations, fiscal policies and financial transactions of the city (subd a), to investigate all matters relating to or affecting city finances, including performance of contracts and expenditure of city funds and for that purpose to require the attendance of and examine under oath "such persons as he may deem necessary” (subd b), to audit expenditure of city funds by any public agency that receives funds from the city (subd c), to audit operations and programs of city agencies as to efficiency, *569 economy and achievement of goals and to undertake studies "of purchases of * * * services by agencies * * * that use city funds for such purposes” (subd d) and make recommendations based on such studies. The board of education of the city is an "agency” of the city (New York City Charter, § 1150, subd 2; Matter of Maloff v City Comm. on Human Rights, 38 NY2d 329, 332).
While the status of the board as a city agency does not permit the comptroller to audit matters strictly educational or pedagogic, the board is subject to municipal control in matters not in that category (Matter of Hirshfield v Cook, 227 NY 297, 304; see Matter of Maloff v City Comm. on Human Rights, supra; Matter of Board of Educ. v Goldin, 94 Misc 2d 574, 581, affd 72 AD2d 603). Petitioner’s papers establish that the subpoena issued to respondents was part of the comptroller’s investigation and audit of pupil transportation contracts made by the board, that such contracts cover transportation of some 133,000 pupils daily at an annual cost in 1976-1977 of $73,000,000, that the purpose of the audit was to determine whether city funds were being expended efficiently, and that the inquiry was into four basic areas: competitive bidding procedures, contract specifications, performance monitoring and contract enforcement.
Respondents argue that the claim that the comptroller is investigating transportation contracts generally is but a subterfuge. Were that so respondents could be entitled to protection, for investigatory power may not be used to harass or as a substitute for discovery (Matter of A ’Hearn v Committee on Unlawful Practice, 23 NY2d 916, 918; Matter of Hirshfield v Hanley, 228 NY 346, 349). Here, however, the Appellate Division made no such finding and reversed on the law, so the issue does not appear to be open in this court. Were it, we would have to say, as did Chief Judge Cardozo in Matter of Edge Ho Holding Corp. (256 NY 374, 381; see Matter of Hirshfield v Craig, 239 NY 98, 110;* Matter of New York *570 World’s Fair 1964-1965 Corp. v Beame, 22 AD2d 611, 617, affd 16 NY2d 570) that, assuming that motive is subject to judicial review, nothing in the record gives support to the conclusion that "the professed object of the inquiry * * * is merely a cover and a sham.” To the contrary, the interim report prepared under supervision of the division chief of the bureau of performance analysis in the comptroller’s office shows that more than 40 contractors have been similarly audited, that operators of more than 15 wagons are required to provide performance bonds the security for which may amount to one third the value of the contract, and that since only 3 of the 40 contractors have performance bonds, many operators appear to be avoiding the performance bond requirement by using joint staff and resources for carriers with but 15 or fewer wagons.
No more of an objection to the subpoena is it that respondents are not city employees, or that the subpoena served on them is directed to but a single contract, since the inquiry is into pupil transportation contracts generally and respondents are not protected from disclosure of their own affairs in such an inquiry (Matter of Edge Ho Holding Corp., supra, at p 380; Matter of Erb Strapping Co. v Waterfront Comm. of N. Y. Harbor, 31 AD2d 101, 103). Moreover, there is no question, notwithstanding the revision made by CPLR 2302 (subd [a]) in the language of section 406 of the Civil Practice Act, about the power of the comptroller under section 93 of the City Charter to issue a subpoena duces tecum (Matter of New York World’s Fair 1964-1965 Corp. v Beame, 22 AD2d 611, affd 16 NY2d 570, supra).
Respondents argue also that the appeal is moot since the comptroller issued a report on February 13, 1978 and has thus concluded the investigation of school bus contracts which was part of his audit of the board of education. The comptroller characterizes the report as "interim”, however, and respondents have offered nothing to suggest that that characterization is untrue. Moreover, to dismiss the appeal as moot would be contrary to the public interest, for it would frustrate the purpose of the investigatory powers given the comptroller by requiring that he either withhold any report until all legal roceedings had been terminated or forego the information t would otherwise be obtained from a recalcitrant and s witness.
main only the questions whether the inquiry under *571 taken is within the powers granted the comptroller by section 93 of the City Charter and, if so, whether the materials requested bear a reasonable relationship to that inquiry. There can be little question that the section authorizes the investigation of pupil transportation contracts of the board of education. As already noted, the board is a city agency which receives funds from the city. Subdivision d expressly authorizes, if not mandates, the comptroller’s studying the purchase of services by agencies using city funds for that purpose, and subdivision c directs that he audit expenditures of such an agency. Moreover, subdivision b empowers him to investigate performance of contracts and gives him power to examine "such persons as he may deem necessary”. While the latter provision does not give him unbridled discretion to examine anyone he chooses without reference to whether the person is related to the inquiry, there can be no question that Colonial, a contractor with the board since 1971, receiving some $500,-000 per year from the operation of its 31 wagons in transportation of handicapped children, and which has no other source of income, is so related.
The Appellate Division’s memorandum suggests that without a showing of collusive bidding the comptroller cannot make an audit broader in scope than already done by the board. Nothing in the wording of section 93 suggests any such limitation. Indeed, so to limit the comptroller would make it impossible for him to audit the board’s expenditure of funds, as subdivision c directs him to do, in any case in which the board had failed to conduct a proper audit. Nor can the limitation be justified on the basis of the oppressiveness of multiple audits, for respondents have indicated their willingness to allow the comptroller to examine with respect to contract compliance.
There is a further basis for holding the inquiry into respondents’ records authorized. Petitioner’s preliminary audit, its director swears, disclosed that the president and owner of Abco Bus, another contractor with the board, shared premises with and dispatched for Colonial and that Colonial was Abco’s answering service and provided Abco’s health insurance. Respondents deny these allegations, other than that relating to health insurance, and swear that the two companies do not compete and do not have common stockholders or directors, but that denial does not authorize the courts by denying access to respondents’ records to decide the question which the *572 inquiry seeks to determine (Matter of Erb Strapping Co. v Waterfront Comm. of N. Y. Harbor, 31 AD2d 101, 103, supra). All that need be shown is " 'a reasonable relation to the subject matter under investigation and to the public purpose to be achieved’ ” (Matter of La Belle Creole Int. v Attorney-General of State of N. Y., 10 NY2d 192, 196, quoting from Carlisle v Bennett, 268 NY 212, 217). We cannot say that "the futility of the process to uncover anything legitimate is inevitable” (Matter of Edge Ho Holding Corp., 256 NY 374, 382, supra; see, also, Matter of La Belle Creole Int. v Attorney-General of State of N. Y., supra). Subject to respondents’ right to make a further application should the inquiry become unduly protracted, intrusive or burdensome (Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 28 NY2d 916, 918), the subpoena should not be quashed or limited, unless it calls for documents wholly irrelevant to proper inquiry (Matter of La Belle Creole Int. v Attorney-General of State of N. Y., supra).
The papers called for by the subpoena are Colonial’s books of account and financial statements, the workpapers underlying those books and statements, payroll records and insurance policies and statements, each for three years prior to the date of the subpoena. Respondents, as already noted, are willing to have the comptroller examine as to contract compliance, but argue that the papers subpoenaed are "internal corporate records which have no direct or indirect bearing upon the financial condition of the City” and that, in any event, they have no "workpapers underlying books of account and financial statements”.
The fact that respondents do not have workpapers is a matter to be stated in response to the subpoena, not a basis for quashing it. Respondents’ payroll and insurance records cannot be deemed wholly irrelevant to the inquiries concerning the relationship between Colonial and Abco, and we cannot say that those records together with books of account and financial statements are unrelated to the comptroller’s inquiry into efficiency, involving as it does not only what the present practice is but also what the future practice should be (Matter of Edge Ho Holding Corp., supra, at pp 379, 380; Matter of Dairymen’s League Coop. Assn. v Murtagh, 274 App Div 591, 595, affd 299 NY 634).
For the foregoing reasons, the order of the Appellate Divi *573 sion should be reversed, with costs, and the judgment of the Supreme Court, New York County, reinstated.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, etc.

 Those cases concerned the commissioner of accounts, predecessor of the present commissioner of investigations, rather than the comptroller. While the former was empowered to examine "the accounts and methods of the departments and offices of the city” as the Mayor directed, and to make "such other examinations as the commissioner may deem for the best interests of the city”, the difference in language goes to the scope of inquiry, discussed below, rather than motive or method of tbe investigating official. The commissioner of accounts cases are, therefore, "applic^y in principle, and in rule of construction” (Matter of Comptroller of City of [Greenberg], 181 Misc 860, 863).