BIG APPLE CONCRETE CORP. et al., Respondents, v ROBERT ABRAMS, as Attorney-General of the State of New York, Appellant.

First Department, October 30, 1984

APPEARANCES OF COUNSEL

*Ellen J. Schneider* of counsel (*Richard Gabriele* with her on the brief; *Robert Abrams, Attorney-General,* and *Lloyd Constantine,* attorneys), for appellant.

*Richard Berne* for Big Apple Concrete Corp., respondent.

*Frederick P. Hafetz* of counsel (*Goldman & Hafetz,* attorneys), and *Donald A. Hopper,* respondent *pro se,* and for Transit-Mix Concrete Corp. and others, respondents.

*Bandler & Kass,* respondent *pro se,* and for S & A Concrete Co., Inc.

*Thomas Cartelli,* petitioner *pro se.*

*Gerald B. Lefcourt* for Marine Pollution Service, Inc., respondent.

*Obermaier, Morvillo & Abramowitz* for I.I.J. Enterprises, Inc., respondent.

*Benjamin Brafman, P. C.,* for Vigliarolo Bros., Inc., respondent.

OPINION OF THE COURT

MILONAS, J.

The instant matter concerns petitioner's challenge to a series of subpoenas issued by the Attorney-General of the State of New York in connection with an investigation into whether certain firms and individuals associated with the ready-mix concrete industry in New York City have committed violations of the Donnelly Antitrust Act. (General Business Law, § 340 *et seq.*) Special Term quashed several demands contained in the subpoenas on the grounds that the subpoenas were overbroad or that the materials sought were privileged from disclosure. This court disagrees.

According to the Attorney-General, despite the fact that raw materials used for the manufacture of ready-mix concrete are less costly in New York than in other sections of the country, the prices charged in New York City are the highest in the Nation, and it is, therefore, the purpose of the investigation to determine if these prices are the product of unlawful, anticompetitive agreements or arrangements. In that regard, a major focus of the probe is the apparently systematic consolidation of all of the ready-mix production facilities in Manhattan into the control of a single person, Edward J. Halloran, which was accomplished through a number of corporate acquisitions from 1974 to 1981.

The Attorney-General, in furtherance of his inquiry, served subpoenas upon 10 corporations, three individuals and a partnership between September 16 and October 28 of 1982. The corporate recipients of these subpoenas were required to produce certain categories of documents and to furnish answers to interrogatories, while only documents were demanded from the individuals and partnership. The parties served subsequently moved to quash the subpoenas on a variety of grounds, and the appeal before us arises out of four unresolved areas of dispute.

Petitioners' first objection relates to the following instruction which was contained in each subpoena for the production of documents: "c. If any document described below is withheld from production on the ground that all or some part of the contents of such document is privileged and need not be disclosed, include in the written statement filed with the Attorney General a section entitled 'Documents Withheld Under Claim of Privilege' and there (1) identify each such document, (2) state its general subject matter, (3) state in detail the basis for each claim of privilege made with respect to it, (4) state whether a similarly-based claim of privilege has previously been made with respect to it in connection with any action or investigation, (5) if the answer to (4) is yes, state what disposition was made of each such claim, and (6) if only part of its contents is claimed to be privileged, state the full text of the non-privileged part or, in lieu thereof, prepare and produce a copy of it from which the part claimed to be privileged has been redacted."

■ Special Term concluded that the Attorney-General's questionnaire is improper in its present form since "a record custodian may not be compelled to reveal either the nature or the type of information to which he asserts a privilege from disclosure" (*United States v O'Henry's Film Works,* 598 F2d 313) and that such statements, like the acts of production, may be deemed testimonial admissions to which the same privileges attach (*Matter of Vanderbilt* [*Rosner — Hickey*], 57 NY2d 66; *Fisher v United States,* 425 US 391). It is the Attorney-General's position that the information being sought was requested in order to evaluate the validity of the various claims of privilege under which the documents might be withheld and, as such, constituted a necessary and proper subject of inquiry. Petitioners, without specifically responding to respondent's contention, assert that the issue has now become moot in view of their acknowledged intention to provide the Attorney-General with the written statement in Document Instruction C. However, notwithstanding any possible change in circumstances, an appeal will not be considered moot where it meets the following three criteria: "(1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i.e., substantial and novel issues." (*Matter of Hearst Corp. v Clyne,* 50 NY2d 707, 714-715.) Applying this standard, the matter is not only not moot, but it directly affects the fundamental rights and interests of the parties. Compliance with Document Instruction C would depend almost entirely on petitioners' good faith rather than on any enforceable legal mandate. Moreover, in view of Special Term's ruling on this issue, the Attorney-General would, in effect, have little legal recourse should respondent be dissatisfied with the sufficiency of petitioners' answers.

■ Of the 14 subpoenas involved herein, 10 were directed to corporations and one to a partnership. The law is clear that these organizations have no Fifth Amendment privilege to assert and must thus designate a suitable representative to make responses. (*Bellis v United States,* 417 US 85; *United States v White,* 322 US 694.) While the organizational recipients of the subpoenas might be able to with-

hold relevant materials under other claims of privilege, such as attorney-client or work product, they may not do so on Fifth Amendment grounds. At Special Term, petitioners contended that the individuals who will have to answer on behalf of the corporation have Fifth Amendment rights, and the corporation's response to the subpoena might violate these rights. Yet, this argument has been repeatedly rejected. The Fifth Amendment privilege is personal and may not be vicariously asserted by organizations on behalf of their employees, officers or members. (*Couch v United States,* 409 US 322; *United States v Kordel,* 397 US 1; *Matter of Bleakley v Schlesinger,* 294 NY 312.) To permit a corporate representative to claim personal privilege in such a manner would create an immunity for the corporation which is not authorized either by statute or in the Constitution. (See *Matter of Bleakley v Schlesinger, supra,* at p 317.) As to the individual petitioners, a party who claims a privilege has the burden of demonstrating his right to withhold the documents or information being sought. (*Matter of Priest v Hennessy,* 51 NY2d 62; *Koump v Smith,* 25 NY2d 287.) In order to discharge this burden and avoid compliance with an otherwise valid subpoena, it is not adequate for the witness merely to make a general or "blanket" claim of privilege. (*Hoffman v United States,* 341 US 479; *United States v Malnik,* 489 F2d 682; *United States v Ponder,* 475 F2d 37; *United States v Solon,* 294 F Supp 880, affd 405 F2d 1211.) None of the individual petitioners herein have asserted the Fifth Amendment personally but have simply joined in the collective attack on Instruction C. Further, there is nothing improper about posing an interrogatory in a subpoena which is potentially incriminating. (*Minnesota v Murphy,* 465 US __, 104 S Ct 1136; *Matter of Cunningham v Nadjari,* 39 NY2d 314.) The only issue is whether a witness can legitimately decline to answer. Since the individual petitioners have failed to demonstrate any basis for refusing to respond to the subpoena on Fifth Amendment grounds, Special Term should not have granted the motion to quash Document Instruction C.

█ The second matter under dispute concerns the Attorney-General's demand for "other documents" with regard to certain areas of inquiry deemed relevant to the investigation by respondent. Special Term found such requests to

be improper because of a failure to describe the kinds of documents being sought. The Attorney-General then modified the subpoenas to include references to particular types of records and asked for "other documents" as well. Petitioners objected to the revision as overbroad and ambiguous, and the court agreed, striking every use in the subpoenas of the words "other documents". However, subpoenas calling for "all documents" or "all papers" or "writings of any kind" with respect to a particular subject have been repeatedly upheld so long as the information sought is reasonably related to a proper area of investigation. (*Matter of New York State Comm. on Judicial Conduct v Doe*, 61 NY2d 56; see, also, *Matter of Eastern Ind. Supply Corp. v Waterfront Comm.*, 96 AD2d 469.) Although a demand for documents in an investigative subpoena must specify the material being requested with some degree of specificity, "this requirement of subject matter identification is not very exacting. All that the issuer of an office subpoena need demonstrate in order to avoid a motion to quash is that the materials sought have 'a reasonable relation to the subject matter under investigation and to the public purpose to be achieved.'" (*Virag v Hynes*, 54 NY2d 437, 442.) Since the subpoenas at issue here make reference to "other documents" in the context of a specific area under investigation (as, for example, "All contracts, correspondence, memoranda, notes and other documents that record, reflect, refer to or relate to the negotiation, making, enforcement, or attempted enforcement of any covenant not to compete * * *"), they are neither so vague or overbroad nor unrelated to a legitimate subject of inquiry as to mandate that the term "other documents" be deleted.

■ The Attorney-General also asserts that under the circumstances of this investigation, it is both appropriate and necessary for respondent's subpoenas to cover the time dating back to January 1, 1974. Special Term modified the subpoenas to limit them to a period after January 1, 1979. While it is true that the Statute of Limitations contained in the Donnelly Antitrust Act is three years for a criminal prosecution and four years for a civil case (General Business Law, § 340, subd 5; § 341), illegal agreements in restraint of trade often involves continuing conduct rather

than a single isolated event. In the present situation, the Attorney-General has made an adequate showing that the monopolistic practices being investigated allegedly commenced in 1974 with entry of Edward J. Halloran into the ready-mix concrete business and that his acquisitions and conduct prior to 1979 are relevant to an inquiry into a continuing violation of the Donnelly Act. Moreover, the fact that an action may be barred for violations which occurred during the period covered by the records requested pursuant to a subpoena does not of itself render these records irrelevant. (*Matter of Crowley Foods v Lefkowitz*, 75 AD2d 940; *Long Is. Moving & Stor. Assn. v Lefkowitz*, 24 AD2d 452.)

■ Finally, the Attorney-General challenges the striking by Special Term of the interrogatory addressed to the 10 corporate recipients which directs them to: "11. Identify each document described in the section of this Attachment entitled 'Documents To Be Produced' that cannot be produced because such document ceased to be in your possession or custody or subject to your control at any time after January 1, 1980."

Petitioners claim that while the corporations do not possess Fifth Amendment rights, the interrogatory demands self incriminating information from the custodians of the documents, who do have such a privilege. However, as has previously been noted, a corporation may not cloak itself in the Fifth Amendment rights of its employees. If a particular employee cannot answer on behalf of the corporation because of his or her Fifth Amendment rights, then the corporation must produce someone who can respond.

Consequently, the order of the Supreme Court, New York County (Allen Murray Myers, J.), entered on or about September 9, 1983, which granted petitioners' motion in part, granted respondent's cross motion in part and modified the subject subpoenas in accordance with the court's written opinion of June 9, 1983, should be modified, on the law, to the extent of amending the resettled subpoenas to include Instruction C, include the request for "other documents", expand the scope of the subpoenas back to January 1, 1974 and reinstate interrogatory 11 as to the corporate

petitioners, and otherwise affirmed, without costs or disbursements.

MURPHY, P. J., ROSS, CARRO and ALEXANDER, JJ., concur.

Order, Supreme Court, New York County, entered on or about September 9, 1983, unanimously modified, on the law, to the extent of amending the resettled subpoenas to include Instruction C, include the request for "other documents", expand the scope of the subpoenas back to January 1, 1974 and reinstate interrogatory 11 as to the corporate petitioners, and otherwise affirmed, without costs and without disbursements.