*273 OPINION OF THE COURT
Saliann Scakpulla, J.
In this special proceeding, petitioner Carl Andrews & Associates, Inc. seeks an order pursuant to CPLR 2304 quashing the subpoena duces tecum, dated February 19, 2010 (the subpoena), served by respondent State of New York Office of the Inspector General.
The Inspector General issued the subpoena in connection with its investigation of the selection of an entity to operate the video lottery terminal (VLT) facility at Aqueduct racetrack. The subpoena seeks a variety of items. However, as a result of negotiations between the parties, in an e-mail message dated June 16, 2010, the Inspector General provided that it will accept the following categories of documents as responsive to the subpoena:
“1. Any and all document obtained by Carl Andrews from members of the New York State Legislature or Executive branch regarding the Aqueduct ‘racino’ process, including but not limited to memoranda authored by New York State Senate counsel analyzing the vendors seeking to be awarded the ‘racino’ contract; and
“2. Any and all documents reflecting substantive communications between Carl Andrews and members of the New York State Legislature or Executive branch regarding the Racino process. (Since the issue of abstract ‘Do you want to have lunch?’ e-mails was discussed today, please note that the Inspector General does not seek such general communications. Rather, the Inspector General seeks communications such as e-mails in which lunch or other meetings were actually scheduled.)”
As the Inspector General has indicated it will narrow the subpoena and seek documents responsive to these categories, the court addresses the subpoena as narrowed.
Andrews is a lobbying company, formed in or around January 2009. Carl Andrews, a former New York State Senator, is its sole employee. Immediately prior to forming the lobbying company, Mr. Andrews worked in the executive chamber of the Governor of the State of New York. On May 15, 2009, Aqueduct Entertainment Group (AEG) retained Andrews to lobby in connection with AEG’s bid to operate a VLT facility at Aqueduct.
Tax Law § 1612 (e) (as added by L 2008, ch 18, § 101) provides in pertinent part that “[t]he video lottery gaming operator *274 selected to operate a video lottery terminal facility at Aqueduct will be subject to a memorandum of understanding between the governor, temporary president of the senate and the speaker of the assembly.”
A group was selected to operate the VLT in October 2008, but after that group was forced to withdraw, Governor Paterson restarted the bidding process in April 2009. At that time, the Governor issued a new solicitation and a new memorandum of understanding (MOU). The MOU provides that the Governor, the Assembly Speaker, and the Temporary President of the Senate were to enter the MOU to select the VLT operator. And, as asserted by the Inspector General, “various executive branch agencies and officials were involved in the evaluation and selection process” for the VLT facility.
In particular, the Inspector General states that the Division of the Lottery (Lottery) and the Division of the Budget (DOB) were involved in the process of vetting bids for the Aqueduct VLT franchise, and that the Office of General Services was part of the process as the project would be subject to environmental review. The Inspector General further states that the New York Racing and Wagering Board was involved in meetings and discussions regarding the bid submissions, and that the Empire State Development Corporation was also involved, as it would be administering a bond offering to finance the building of the VLT facility at Aqueduct.
On or around January 29, 2010, Governor Paterson announced the selection of AEG to operate the VLT at Aqueduct. Shortly thereafter, numerous newspaper reports appeared questioning the selection of AEG. As reported by the Inspector General, its investigation confirmed media reports that AEG was selected despite questions regarding its ability to secure a license from Lottery, due to the history of some of its members.
After the reports surfaced suggesting improprieties in the VLT selection process, the Inspector General began an “investigation of the executive officials and agencies involved in the process of evaluating and selecting the VLT franchise for Aqueduct racetrack.” The Inspector General then received a letter, dated February 11, 2010, from New York State Assembly Speaker Sheldon Silver, requesting that the Inspector General initiate an investigation of the process by which Lottery and other executive agencies analyzed the bidders for the VLT at Aqueduct racetrack. The subpoena at issue here was issued as a part of the Inspector General’s investigation.
*275 In support of its petition to quash, Andrews argues that the subpoena is invalid because the Inspector General does not have the authority to seek some of the documents requested in the subpoena, and because the Inspector General seeks documents which would be irrelevant to a legitimate investigation.
In opposition, the Inspector General argues that it does have the authority and a sufficient basis to conduct its investigation into the VLT bidding process, and that Andrews cannot meet its burden to show that the subpoena seeks “utterly irrelevant” information.
Discussion
“An application to quash a subpoena should be granted [o]nly where the futility of the process to uncover anything legitimate is inevitable or obvious, or where the information sought is utterly irrelevant to any proper inquiry.” (Anheuser-Busch, Inc. v Abrams, 71 NY2d 327, 331-332 [1988] [citations and internal quotation marks omitted].) While a “demand for documents in an investigative subpoena must specify the material being requested with some degree of specificity,” this standard is not very exacting. (Big Apple Concrete Corp. v Abrams, 103 AD2d 609, 614 [1st Dept 1984].) “All that the issuer of an office subpoena need demonstrate in order to avoid a motion to quash is that the materials sought have £a reasonable relation to the subject matter under investigation and to the public purpose to be achieved.’ ” (Big Apple Concrete, 103 AD2d at 614, quoting Virag v Hynes, 54 NY2d 437, 442 [1981].) “The person challenging a subpoena bears the burden of demonstrating a lack of authority, relevancy or factual basis for its issuance.” (Matter of Hogan v Cuomo, 67 AD3d 1144, 1145 [3d Dept 2009] [citation omitted].)
Here, Andrews argues that the subpoena should be quashed as the Inspector General lacks authority. In particular, Andrews argues that the Inspector General has limited authority over covered agencies, and cannot launch an investigation into “all aspects” of the VLT vendor selection process.
Andrews’ second argument dovetails from its first, claiming that were Andrews to comply with the subpoena, it would result in the production of items “utterly irrelevant to any legitimate investigation into the activities of a covered executive branch agency.” In support of this argument, Andrews asserts that it has not had any contact with a covered agency regarding any aspect of the VLT vendor selection process; therefore the subpoena could not possibly seek any documents relevant to a legitimate investigation of that process.
*276 As a third basis to quash the subpoena, Andrews argues that the Inspector General cannot demonstrate a factual basis to suggest that Andrews had contact with members of the executive branch regarding the VLT vendor selection process.
Andrews’ argument that the Inspector General lacks authority is unavailing. The Inspector General’s authority is statutorily derived. Executive Law § 51 states the scope of the Inspector General’s jurisdiction, and provides that the Inspector General has “jurisdiction over all covered agencies.” It further provides that “[flor purposes of this article ‘covered agency’ shall include all executive branch agencies, departments, divisions, officers, boards and commissions, public authorities . . . and public benefit corporations, the heads of which are appointed by the governor and which do not have their own inspector general by statute.”
Moreover, Executive Law § 54 provides that “[t]he State inspector general shall have the power to . . . (3) require the production of any books and papers deemed relevant or material to any investigation, examination or review.”
As the Inspector General establishes, it is well within its authority to pursue an investigation into the VLT vendor selection process. It has authority over many of the agencies involved with the process, including but not limited to the Governor, the Executive Chamber, Lottery, the Office of General Services, DOB, the Racing and Wagering Board, and the Empire State Development Corporation. The requests in the subpoena, as narrowed, are tailored to uncover information relevant to a proper inquiry, specifically the inquiry into the selection of AEG for the VLT franchise.
Moreover, as provided in Executive Law § 54 (3), the Inspector General’s subpoena power is not limited to covered agencies, but rather it can “require the production of any books and papers deemed relevant or material to any investigation.”
Andrews also asserts that it does not have any responsive documents, so the subpoena therefore must be seeking documents which are “utterly irrelevant.” Andrews asserts that it did not lobby the executive branch, as it was prohibited from doing so. This argument is insufficient to quash the subpoena. “The fact that respondents do not have [the requested documents] is a matter to be stated in response to the subpoena, not a basis for quashing it.” (Matter of Goldin v Greenberg, 49 NY2d 566, 572 [1980].) As Andrews concedes that it was retained by AEG in connection with AEG’s bid to operate a VLT facility at Aqueduct, the relevancy of the subpoena is readily apparent.
*277 For much the same reason, Andrews’ second argument, that the Inspector General lacks a factual basis to pursue this subpoena, is also without merit. Andrews concedes that it was retained by AEG regarding AEG’s bid to operate a VLT facility at Aqueduct, and AEG’s selection and the VLT selection process in general are both within the Inspector General’s authority to investigate. Additionally, the Inspector General details other information supporting its investigation into AEG’s award of the VLT franchise, as well as the request by Assembly Speaker Sheldon Silver to investigate the process. Accordingly, Andrews has failed to demonstrate a lack of authority, relevancy or factual basis for the issuance of the subpoena by the Inspector General.
Lastly, Andrews argues that the subpoena should be quashed on separation of powers grounds, asserting a legislative privilege. As Andrews is a private lobbying company, it has no standing to assert a legislative privilege. Additionally, the New York State Senate, Senator John L. Sampson and Senator Pedro Espada, Jr., upon receipt of a subpoena by the Inspector General, raised this very issue to the court, and it was rejected. (See New York State Senate v Office of the Inspector General of the State of New York, Mar. 31, 2010, index No. 103789/10.) This court (Lobis, J.) denied their motion to quash, stating in part
“I believe it’s the activity that’s being investigated and the subpoenas that have been served shall not be quashed and the motion denied. I don’t believe that the privilege is broad enough to cover what is no longer part of the deliberative process of the legislature and that the acts that are being investigated are truly more akin to those of the executive and the executive branch than something the privilege should attach to[.] Therefore . . . there was, in fact, a reason for the investigation and the requests and subpoenas are relevant to such an investigation.” (New York State Senate v Office of the Inspector General, index No. 103789/10.)
For the same reasons, the separation of powers argument is rejected here as well.
In accordance with the foregoing, it is hereby ordered that the petition by Carl Andrews & Associates, Inc. for an order pursuant to CPLR 2304 to quash the subpoena duces tecum dated February 19, 2010, served on it by respondent State of *278 New York Office of the Inspector General, is denied; and it is further ordered that Carl Andrews & Associates is ordered to comply with the subpoena, as modified in the June 16, 2010 e-mail, within 30 days of the date of notice of entry of this order.