In the Matter of the Application of HELEN LATTINVILLE and WILLIAM J. LATTINVILLE, Petitioners, for an Order against FRED W. ERETH, Auditor of the City of Rochester, Monroe County, New York, Respondent.

Supreme Court, Monroe County, March 20, 1941.

*J. Paul Brennan*, for the petitioners.

*William H. Emerson, Corporation Counsel [Sam Di Pasquale* of counsel], for the respondent:

LAPHAM, J. This is a motion on an order to show cause for an order directing the auditor of the city of Rochester to refrain from conducting hearings on the claims of the applicants against the city. The city moves to dismiss the petition of the applicants on the ground that it fails to state facts sufficient to entitle the petitioners to the relief asked, or to any relief.

On January 10, 1941, the petitioners, husband and wife, filed with the city clerk and the corporation counsel verified claims and notices of intention to sue the city. Helen Lattinville alleged that she suffered personal injuries as a result of drinking polluted water furnished by the city, and William J. Lattinville asked for damages sustained by him as a result of these injuries to his wife.

On February 21, 1941, the city auditor caused subpœnas to be served on the claimants directing each to appear before him at a hearing to be held on February 26, 1941, at the City Hall in order to give evidence on their claims. The subpœna stated

that in the event of a failure to attend the hearing, an application would be made to a justice of the Supreme Court for an order punishing the recalcitrant claimant for contempt and holding him liable to pay all damages sustained by the city in addition to a forfeiture of fifty dollars as the court might determine. The claimants refused to recognize the validity of this subpœna and the power of the auditor to examine them, and they have asked for a restraining order under article 78 of the Civil Practice Act.

The sole issue before the court is whether the city auditor has the power to compel the claimants to submit to an examination on their claims.

Power to investigate claims against the city is expressly conferred on the auditor by section 210 of the City Charter of Rochester (Laws of 1907, chap. 755, § 210, added by Rochester Local Laws of 1925, No. 4). The claimants contend, however, that this section applies only to claims on contract and does not reach to claims in tort. I do not believe that the scope of this section can be so narrowed, especially when it is set beside other allied provisions of the Charter.

Section 210 provides, so far as it is relevant here: " No claim against the city shall be paid unless it is evidenced by a claim voucher approved by the head of the department, bureau, division, office, commission, court, or board for which the obligation was incurred, and each such officer and his surety shall be liable to the city for all loss or damage sustained by the city by reason of his negligent or corrupt approval of any claim voucher. The auditor shall examine all payrolls, bills and other claims and demands against the city and shall not pass any claim for payment unless he has found that the claim is in proper form, correctly computed and duly approved; that it is justly and legally due and payable; that an appropriation or authorization has been made therefor which has a sufficient balance; and that there is money in the treasury to make the payment. He may investigate any claim and for that purpose may summon before him any officer, agent or employee of the city, the claimant or other person, and examine him upon oath or affirmation relative thereto, which oath or affirmation he may administer."

The auditor is given in unequivocal terms the power to investigate ' any claim." The language is all-embracing and admits of no limitation in the sentence of the section in which power to investigate is explicitly given. The context in which the words of a statute appear sometimes suggests a restriction that has not been expressly stated, but this is only a principle of judicial construction of a statute never to be followed slavishly but only so far as it

helps to disclose what to the court appears to be the intent of the makers of the statute under scrutiny. That intent can rarely be found within the narrow bounds of one section and must be sought in the larger context of the statute or charter as a whole.

Section 134 of the Charter (as added by Rochester Local Laws of 1925, No. 4, as amd.) provides that the corporation counsel " shall, subject to the approval of the council, have power to enter into any agreement and to compromise and settle any claim against the city." Section 632 of the Charter outlines the procedure for the bringing of claims against the city for injuries to person or to property and provides in part: " * * * No action may be maintained for damages or injuries to persons or property caused or sustained as aforesaid unless the claim therefor is presented to the common council and corporation counsel within thirty days and notice of intention is served upon the corporation counsel within six months, and the action is commenced within one year after such damages or injuries were sustained, but no such action may be brought until three months have elapsed after the presentation of the claim to the common council and the corporation counsel."

The purpose of deferring an action on a claim for three months is to protect the city against unfounded claims and to give the council an opportunity to decide whether it wishes to exercise its power to compromise a claim without incurring the expenses of litigation. (*Denecke* v. *Property Collaterals, Inc.*, 279 N. Y. 105, 107; *McGovern* v. *City of New York*, 160 Misc. 714; affd., 247 App. Div. 775; affd., 272 N. Y. 455; *Reynolds* v. *Village of Nyack*, 258 App. Div. 667.)

That purpose can be fulfilled only if there is power to investigate claims and to examine the claimants in the course of that investigation at a time when the facts are fresh and are most easily accessible. Before the council can make this decision, it must have the chance for an intelligent appraisal of the merits and validity of a claim, and the full inquiry necessary for achieving this purpose can be assured only if there is power to examine the claimant under oath. This power of examination must reside somewhere in the city government. It would be futile to grant the power to compromise a claim and to withhold the only effective means of gathering the information necessary to make an intelligent use of this power. It is not essential that the power to settle a claim and the power to investigate and examine should be intrusted to the same body or to the same official. It is enough that the power to investigate and to examine exists somewhere in aid of the power to compromise a claim.

When sections 134 and 632 of the Charter, therefore, are set beside section 210, it seems clear that the right to investigate claims in tort has been given to the city auditor. The council has divested itse`f of a fragment of its power to settle claims by delegating to the auditor the power to investigate and to pass initially on their validity. It is significant that section 210 is not an original Charter provision. It is, on the contrary, a local law which became a part of the Charter in 1925 and it was passed by the council of the city which under the original Charter provisions (Laws of 1907, chap. 755) had the exclusive power to act on claims against the city. The local law was a delegation of authority in aid of the larger power of the council to compromise claims against the city.

It is not anomalous, as the petitioners suggest, that a claim in tort should be presented for audit or for adjustment to the auditor or to the chief fiscal officer of a municipality. The auditor of the city of Rochester " as the head of the bureau of audits and accounts, * * * " is " the chief auditing and accounting officer of the city." (Charter, § 122 [as added by Rochester Local Laws of 1925, No. 4].) Under the Greater New York Charter (§ 149), all claims against the city of New York must be presented to the comptroller who has power to adjust and compromise a claim (*Moren* v. *City of New York*, 163 App. Div. 561; *Matter of Farley* v. *Weil*, 63 Misc. 188), while under the Charter of the city of Buffalo claims for wrongs to person or property must be presented for audit to the common council and to the auditor. (*Curry* v. *City of Buffalo*, 135 N. Y. 366.) A similar provision exists in section 50-c of the General Municipal Law where claims against municipalities arising out of the negligent operation of vehicles by agents of the municipality and by policemen and firemen must be presented to the comptroller or to the corresponding officer of the municipality for adjustment.

With the lifting of the immunity of municipalities from actions in negligence, the right to examine claimants has been traditionally associated with the right to compromise claims before they mature into actions. A village under the Village Law has the power which the claimants would deny to the city of Rochester. Section 341-c of the Village Law gives the mayor of a village the express power to examine claimants under oath and to issue subpœnas to compel their attendance at hearings. In the charters of other cities the power to examine on all claims is conferred in exact and precise terms.

The decisions in the adjudicated cases are of little decisive aid in interpreting a specific charter because there are wide variations

in the language of the charters under review. In *Pulitzer* v. *City of New York* (48 App. Div. 6) the court said, in passing on language of the Charter of the city of New York closely similar to the words of section 210 of the Charter of the city of Rochester: " Thus section 2 of chapter 379 of the Laws of 1860 provided that ' No action or special proceeding shall be prosecuted or maintained against the said the mayor, aldermen and commonalty of the city of New York unless it shall appear by, and as an allegation, in the complaint or necessary moving papers that at least twenty days have elapsed since the claim or claims upon which said action or special proceeding is founded were presented to the comptroller of said city for adjustment * * *; ' and it was held in *Russell* v. *Mayor* (1 Daly, 263) that this requirement was not restricted in its application to any particular class of cases; and in disposing of the contention there made, that the comptroller has nothing to do with the adjustment or settlement of actions of tort, it was said: ' It is contended that the claim of the plaintiff (which was for personal injuries) was not of such a character as the comptroller would have been authorized to adjust had it been presented to him, and that, therefore, as its presentation would have been an idle ceremony, the allegation in that respect should not be required to be inserted in the complaint. The answer to this view, however, is twofold: *First*, the statute in terms declares that *no* action shall be maintained or prosecuted against the defendants unless such an allegation appears in the complaint; and, *second*, the charter of 1857, section 1, Laws 1857, page 874, section 22, specifically provides that the Department of Finance, a department of the defendants, of which the comptroller is the chief officer, " shall settle and adjust *all claims* in favor of or against the corporation, and all accounts in which the corporation is concerned, either as debtor or creditor " — a provision broad enough to include claims of every nature and description.' (See, also, *Knox* v. *Mayor*, 55 Barb. 404.)"

The need for the power to examine a claimant is more acute now when the shield of protection thrown around municipalities by the decisions has been pierced at many points. The assault against governmental immunity has been made by statute and by decision. Liability for highway negligence has been imposed on counties (County Law, § 6) and on towns (Highway Law, § 215). Municipal liability for negligent operation of municipal vehicles and for the negligent operation of these vehicles by policemen and firemen has been assumed (General Mun. Law, §§ 50-a, 50-b, 50-c). Remedies for negligence against town, village and county have been shaped by statute (Village Law, §§ 341-a,

341-b; Town Law, § 67; County Law, §§ 6, 6-a, 6-b). Decisions have narrowed the field of governmental immunity in doubtful cases (*Ottman* v. *Village of Rockville Centre*, 275 N. Y. 270; *Oeters* v. *City of New York*, 270 id. 364; *Augustine* v. *Town of Brant*, 249 id. 198; *Duren* v. *City of Binghamton*, 283 id. 467).

In the face of these expanding remedies against municipalities, it is important that the barrier against spurious claims shall not be let down. The courts have recognized the extent of this need and they have been alert to exact from the claimant a meticulous observance of all statutory and charter requirements for the preservation of claims against municipalities. (*Winter* v. *City of Niagara Falls*, 190 N. Y. 198; *Russo* v. *City of New York*, 258 id. 344; *McGovern* v. *City of New York, supra.*)

The same regard for the protection of municipalities in the interests of all the people should shape any study of charter provisions dealing especially with claims in negligence.

The power of the city auditor to issue a subpœna is a necessary corollary to his right to examine the claimant under the interpretation of section 210 which I have adopted. Although the Charter is silent on his power to issue a subpœna, section 406 of the Civil Practice Act supplies all the implementing language. It provides in part: " When a judge, * * * or other person, * * * has been heretofore or is hereafter expressly authorized by law * * * or to do any other act in an official capacity, in relation to which proof may be taken, or the attendance of a person as a witness may be required; or to require a person to attend, either before him or it, * * * to give testimony, or to have his deposition taken, or to be examined; a subpœna may be issued by and under the hand of the judge, * * * or other person * * * requiring the person to attend."

The claimants argue that the auditor does not have the power to compel them to submit to an examination because the power of examination may be abused without the restraining hand of the court to keep it within proper bounds. There is nothing, unfortunately, quite so susceptible to abuse as power, but the fact that it may be abused does not detract from its existence. There are adequate safeguards that the examination will not be unlimited or inquisitorial. The auditor must confine himself to questions that are pertinent to the claim and the issue raised by it. (*Matter of Grout*, 105 App. Div. 98.) If he steps beyond these relevancies, the claimants need fear no punishment under subdivision 3 of section 406 of the Civil Practice Act.

The motion for a restraining order is denied and the petition is dismissed, without costs.

Let order enter accordingly.