In the Matter of NEW YORK WORLD'S FAIR 1964–1965 CORPORA-
TION, Appellant, *v.* ABRAHAM D. BEAME, as Comptroller of the
City of New York, Respondent.

First Department, April 1, 1965.

*Bernard L. Sanoff* of counsel (*Charles F. Preusse* and *John V. Thornton* with him on the brief; *Whitman, Ransom & Coulson,* attorneys), for appellant.

*John F. Kelly* of counsel (*Milton Weinberg* and *Stephen M. Clayton* with him on the brief; *Leo A. Larkin, Corporation Counsel,* attorney), for respondent.

STEVENS, J. This is an appeal from an order entered February 26, 1965 which denied petitioner's motion for an order vacating a subpœna duces tecum served upon it by the City Comptroller and which granted the cross motion of the City Comptroller for an order directing petitioner to comply with the subpœna duces tecum.

Briefly, respondent (referred to herein as Comptroller) served a subpœna duces tecum upon petitioner (herein World's Fair) directing it to appear before Comptroller on February 8, 1965 at 10:30 A.M., or at any recessed or adjourned date thereafter, to testify under oath in the matter of an investigation and audit by the Comptroller with respect to the operation and accounts of the World's Fair "insofar as they affect the finances of the City of New York and the performance of the contract between the New York World's Fair 1964 Corporation and the City of New York" and that it bring with it at that time certain specified books and records. After the service of such subpœna World's Fair moved to quash and vacate the same, which motion was denied.

On this appeal World's Fair contends that the Comptroller is not authorized by any provision of law, including the General City Law, to issue the subpœna duces tecum, that there is no provision or law or contract which authorizes such an investiga-

tion or audit of the books and records as Comptroller seeks, that the provisions of the Membership Corporations Law granting broad powers of visitation, investigation and financial accounting to the Supreme Court are ample protection to any misappropriation of the World's Fair funds or property, that the language found in section 93 (subd. b) of the New York City Charter is not a grant of power to issue a subpœna or a subpœna duces tecum, that such power as the Comptroller previously had to issue subpœnas stemmed from the provisions of section 406 of the Civil Practice Act read in conjunction with section 93 (subd. b) of the charter and that such power no longer exists under CPLR 2302 (subd. [a]), the successor statute, by reason of the omission of certain language therefrom.

Comptroller, in opposition to the application, urges that under section 93 of the New York City Charter the Comptroller is vested with the power and the duty to investigate all matters relating to or affecting finances of the city and that in conjunction with such power he can issue a subpœna duces tecum as was done here.

The simple issue then is whether there is power vested in the Comptroller (1) to issue a subpœna and a subpœna duces tecum, or more particularly to issue a subpœna duces tecum requiring World's Fair, a membership corporation, to appear before it with its books and records; (2) if such power be concluded to exist whether sufficient is shown to establish this as a proper case for the exercise of such power. The power, if found to exist, must be as a result of express statutory authorization or by necessary implication because of the duties specifically imposed upon the Comptroller. Section 93 of the New York City Charter provides: " The comptroller from time to time in his discretion may, and whenever required by law or requested by the mayor, the board of estimate or the council, shall advise the mayor, the board of estimate and the council on the financial condition of the city or any phase thereof and make such recommendations, comments and criticisms in regard to the operations, fiscal policies and financial transactions of the city as he may deem advisable in the public interest. (b) He shall have power to investigate all matters relating to or affecting the finances of the city, including without limitation the performance of contracts and the receipt and expenditure of city funds, and for such purpose he shall have power to require the attendance and examine and take the testimony under oath of such persons as he may deem necessary." Under the General City Law it is provided: " Subject to the constitution and general laws   *   *   *   every city is empowered:" " To regu-

late the manner of transacting the city's business and affairs and the reporting of and accounting for all transactions of or concerning the city''; '' To investigate and inquire into the matters of concern to the city or its inhabitants, and to require and enforce by subpoena the attendance of witnesses at such investigations ''; '' To exercise all powers necessary and proper for carrying into execution the powers granted to the city.'' (General City Law, art. 2-A, § 20, subds. 19, 21, 23 respectively.) Section 20 deals with specific powers. Under section 19 of the General City Law, dealing with a general grant of powers, '' Every city is granted power to regulate, manage and control its property and local affairs and is granted all the rights, privileges and jurisdiction necessary and proper for carrying such power into execution. No enumeration of powers in this or any other law shall operate to restrict the meaning of this general grant of power, or to exclude other powers comprehended within this general grant.''

Under section 406 of the Civil Practice Act it was provided in part: '' 1 When a judge or an arbitrator, referee, *or other person* * * * has been heretofore or is hereafter expressly authorized by law to hear, try or determine a matter '', such Judge, arbitrator, Referee or other person is empowered to issue a subpoena requiring a person to attend before him and also in a proper case to require such person to bring books and records. (Italics supplied.) CPLR 2302 (subd. [a]), the successor statute, dealing with authority to issue subpoenas, provides: '' Subpoenas may be issued without a court order by the clerk of the court, a judge where there is no clerk, the attorney general, an attorney of record for a party to an action, an administrative proceeding or an arbitration, an arbitrator, a referee, or any member of a board, commission or committee authorized by law to hear, try or determine a matter or to do any other act, in an official capacity, in relation to which proof may be taken or the attendance of a person as a witness may be required.'' It may be noted that the words '' or other person '' are omitted from CPLR 2302. It is upon such omission that World's Fair predicates one of its arguments. It asserts that by reason of the language of section 406 of the Civil Practice Act the Comptroller was included in '' other person '' and when such section was read in conjunction with section 93 of the City Charter the Comptroller could properly issue subpoenas and subpoenas duces tecum; that the omission of the words '' or other person '' is in effect a limitation upon the power of the Comptroller to issue subpoenas.

While CPLR omits the words "other person" it also expanded the category of persons authorized to issue subpœnas in nonjudicial proceedings to make clear that an attorney of record or, under certain conditions, any member of a board, commission or committee might issue subpœnas (2 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 2302.07, 2302.11). With the exceptions noted, section 406 of the Civil Practice Act is substantially re-enacted in CPLR 2302. If the power of the Comptroller to issue a subpœna resided in the omitted language " or other person ", then such power is terminated. We cannot accept the premise that so necessary a power, in light of the responsibilities of the Comptroller's office, would rest upon so flimsy a foundation or be so casually concluded. The Legislature would have made its intention clearly manifest. The more logical view is while it could have been included in the broad language " other person ", though not so designated, such language was neither the source of the power, nor was its inclusion in CPLR necessary to the continued existence of the power. (Cf. *Fifth Ave. Bldg. Co.* v. *Kernochan,* 221 N. Y. 370; *Matter of Prime,* 136 N. Y. 347.)

We consider next whether the operation of World's Fair is a proper matter of concern to the city or its inhabitants, and whether the city's finances are or may be affected by the way the fair is conducted, and the outcome of its operations.

The City of New York was authorized by the Legislature (L. 1960, ch. 428) to enter into a contract with the New York World's Fair 1964 Corporation, leasing certain lands to it, it being expressly provided by such legislation that certain provisions must be included in the lease. Among the provisions required, and which in fact do appear in the lease subsequently granted, was the requirement (L. 1960, ch. 428, § 2, subd. [c]) that the World's Fair " shall at it own cost and expense demolish and remove all temporary structures and clear the site of all buildings and structures not useful for park purposes as certified by said commissioner of parks and that the entire area be restored to a condition satisfactory to the commissioner of parks within such time as of the close of the fair as may be agreed upon in the lease." The substance of this language appears in article 15 of the lease where four months after the close of the fair is set as the time within which the work must be done. It was further required (L. 1960, ch. 428, § 2, subd. [e]) that " all net revenue derived from any source by said New York World's Fair 1964 Corporation and remaining to its credit after the close of the fair and after the payment by the corporation of all its then outstanding bonds,

obligations, liabilities of every kind and nature, including its discharge of all the obligations under the lease, shall be paid to the city of New York and shall be used for the restoration and improvement of Flushing Meadow park and the balance of such revenue remaining thereafter shall be used by the city of New York for educational purposes." Article 16 of the lease required the corporation to apply all receipts from admission fees, rents, license fees, or from any other sources to the payment of *all proper, necessary and reasonable charges* of construction, operation, maintenance, repair, etc., and provided that the net revenue after payment of all of its obligations, including the discharge of the obligations under the lease, would be paid to the city to be used as required by the statute.

Under the provisions cited World's Fair has an obligation to restore the demised premises to the condition existing at the time of the execution of the lease. Obviously the provision was inserted for the benefit of the city, which has expended some 24 million dollars in the area. Admittedly there is no obligation of repayment of this sum by World's Fair. To perform the required restoration, expenditure of moneys will be necessary. The city has an interest in having this work carried out by World's Fair in order that further expense to the city might be avoided. Additionally, since the city is to benefit by receipt of the net revenue, if any, the city is reasonably concerned that the fair's income shall be used only to pay "proper, necessary and reasonable charges" and to discharge valid obligations. The Legislature has limited the city in the use of such net income, if any, by mandating it to use the same "for the restoration and improvement of Flushing Meadow park" with the balance to be used for educational purposes. Clearly the lease–contract relates to and affects the finances of the city. It is not requisite that the effect be fixed, immediate and subject to present accurate calculation as to amount, once the fact that performance of the contract does affect the city is established.

Special Term was satisfied, as are we, from the letters and published reports on the financial condition of World's Fair that the concern manifested by the Comptroller was legitimate and founded upon a rational basis. No good purpose would be served by a repetition of the contents of the documents. The books and records sought appear prima facie to have materiality and relevancy to the investigation sought (*Carlisle* v. *Bennett*, 268 N. Y. 212). The transactions of World's Fair, particularly at this juncture in its operations, the lease being due to expire January 1, 1966, is a matter of genuine concern

to the city (General City Law, § 20) in light of the obligations imposed by the Legislature on the parties, and the provisions of the lease in accordance therewith, and because of the major improvements already made by the city to the general area.

A city, being a corporation, acts only through its officials, agents or employees for public or municipal purposes and the general welfare (General City Law, §§ 20, 21, 22). Under section 20 of the General City Law, a city is given power to require and enforce by subpœna the attendance of witnesses at an investigation into matters of concern to the city (§ 20, subd. 21). The Comptroller is the chief fiscal officer of New York City. Section 20 of the General City Law, when read in conjunction with section 93 of the New York City Charter, setting forth the powers and duties of the Comptroller, with the power to investigate matters relating to the finances of the city, including the power to *require* the attendance of witnesses and take testimony under oath, clearly vests a power of *subpœna ad testificandum* in the Comptroller. (See *Matter of Hirschfield* v. *Hanley,* 228 N. Y. 346.) The term " require ", evidencing compulsion, rather than the suppliant " request ", is used in section 93. Because of the complexity and infinite detail involved in an investigation of this nature, and of investigations when necessarily undertaken by the Comptroller, a bare power of subpœna without the power to issue a subpœna duces tecum to require the production of books and records for use in an examination of a witness in a proper case, would be useless. It will not be presumed that the Legislature in enacting section 20 of the General City Law, or New York City in its charter, engaged in an exercise in futility. The subpœna duces tecum requires World's Fair to appear and testify with respect to the operation and accounts of the corporation insofar as they affect the finances of the city and the performance of the contract between the city and the corporation, and at that time produce certain books and records. Reading and construing the subpœna duces tecum in its entirety, as we must, it appears that such books and records are to be used in connection with the examination of the witnesses. On its face that is a proper purpose and is in accordance with the powers conferred upon the Comptroller. It cannot now be said that the subpœna was not issued in aid of an investigation having a legitimate and reasonable relation to the ends sought to be achieved as expressed in the subpœna. The court will not impute to the Comptroller improper motives in the exercise of a proper power (see *Matter of Hirschfield* v. *Craig,* 239 N. Y. 98, 109–110; cf. *Beardsley* v. *Kilmer,* 236 N. Y. 80; *Matter*

*of Frank* v. *Balog,* 189 Misc. 1016). The use sought, with the restricted scope expressed in the subpœna, is not construed by us as amounting to a roving commission to utilize the books and records for separate and independent purposes aside from those expressed in the subpœna. If an attempt be made to examine a witness on privileged communications or to utilize the books and records sought for "irrelevant, illegitimate or oppressive examinations or purposes", relief may be sought in the courts. (*Matter of Hirschfield* v. *Hanley, supra; Matter of Barnes,* 204 N. Y. 108; *Matter of New York City Council* v. *Goldwater,* 284 N. Y. 296 [where privilege against production of certain records before a legislative committee was upheld]; *Matter of Ellis,* 176 Misc. 887; cf. *Matter of Bromberger* [*Erickson*], 185 Misc. 228.) The power to subpœna where matters of public good in respect to the city's finances are involved, includes in a proper case the power to issue a subpœna duces tecum and is not limited to city employees or city departments (cf. *Matter of Edge Ho Holding Corp.,* 256 N. Y. 374).

An investigation of past financial records is within the scope of the powers conferred, and may bring suggested corrections, if any are needed, for the future (cf. *Matter of Edge Ho Holding Corp., supra; Matter of Dairymen's League Co.-op. Assn.* v. *Murtagh,* 274 App. Div. 591).

Nor does the power of visitation and inspection of the Supreme Court in respect to membership corporations exclude in language or by implication the relief sought here (Membership Corporations Law, § 26). The objects and purposes to be achieved are substantially different. (Cf. *Matter of Hertle* [*Ahearn*], 120 App. Div. 717, 721, affd. 190 N. Y. 531.)

The order appealed from should be affirmed, without costs or disbursements to either party.

EAGER, J. (dissenting). I agree that the Comptroller has subpœna power "to require the attendance" of persons, to the end that he may "examine and take the testimony under oath of such persons" for the purposes set forth in subdivision b of section 93 of the New York City Charter. Such power as he possessed to issue a subpœna "to require the attendance" of a person as a witness, in accordance with the provisions of such section was not, in my opinion, abrogated by the repeal of section 406 of the Civil Practice Act.

Clearly, however, the power conferred upon the Comptroller by subdivision b of section 93 extends solely to require the attendance of witnesses, and he is not expressly given the authority to require the production of documents or papers for

any purpose. If he is to be given the broad subpœna and investigatory powers he seeks in this proceeding, it would be necessary for the Legislature to so provide.

The statute does not confer upon the Comptroller "blanket power to issue at will subpœnas to require any citizen or corporation to bring in private books and records for his general inspection. The subpœna power does not operate in a vacuum but always in the context of a relevancy to the effective pertinent duty of the officer or body authorized to subpœna and examine witnesses." (See *Matter of Dawn Operators* v. *Lyon,* 283 App. Div. 358, 359 [BERGAN, J.], app. dsmd. 307 N. Y. 673.)

Unquestionably, the objective of the Comptroller is to obtain an unlimited discovery and inspection of the papers, books and records of the New York World's Fair 1964–1965 Corporation (Fair Corporation), including the right to a complete financial audit with respect to its operations and present fiscal condition. It is apparent that he claims that his subpœna duces tecum and the provisions of the Special Term order entitle him to examine generally into the administration, conduct and control of the financial and business affairs of the Fair Corporation. But he has no duties whatever with respect to the management or conduct of its business and financial affairs. He is not a judicial officer, an authorized crime investigator, or an officer with general investigatory powers. As a statutory officer, he has only such powers as are conferred upon him by statute. He certainly does not have the power to conduct an examination of the private papers, books and records of the corporation on the theory that it may reveal improprieties and breaches of trust in its management because "that is precisely the sort of official inquisition that uniformly has met with judicial condemnation." (*Matter of Ellis,* 176 Misc. 887, 891, citing *Jones* v. *Securities & Exch. Comm.,* 298 U. S. 1, 26, and distinguishing *Matter of Edge Ho Holding Corp.,* 256 N. Y. 374, relied on in the majority opinion.)

The Fair Corporation, as a membership corporation, is an independent entity. There is no statutory or contractual provision which presently vests a Comptroller or his city with any right of supervision or control with respect to the business of a particular corporation. Certainly, the Comptroller does not have the general and unrestricted power to audit the books of a corporation upon the ground that the public or the city generally has an interest in the affairs of the corporation. (Cf. *Matter of New York Post Corp.* v. *Moses,* 10 N Y 2d 199.)

Concededly, the city itself has very substantial interests at stake in the matter of the performance in good faith by the Fair Corporation of the obligations imposed upon it by statute and

by the terms of the lease of the fairgrounds from the city. But, absent statutory provision therefor, the remedies of the city are limited to proceedings wherein the rights of the Fair Corporation may be adequately protected. The books and records which the Comptroller seeks to examine are not proposed to be used in connection with any presently pending judicial or quasi-judicial proceeding. The subpœna process may not be used here independently of such a proceeding as a remedy for protection against present or prospective breaches of contract.

The decision here could serve as a dangerous precedent to allow a fiscal officer of a municipality, with but limited powers, to conduct, without adequate safeguards, a general examination into the private affairs of individuals or corporations.

Ordinarily, a court does not have the authority to confer sub-pœna powers where they do not exist by statute. (See *Matter of Art Metal Constr. Co.*, 260 App. Div. 153.) Since under the terms of the order of Special Term the Comptroller would be empowered, pursuant to his subpœna duces tecum, to examine generally the papers, records and books of the Fair Corporation for the purpose of " an investigation and audit into the operation and accounts " of the Fair Corporation, and inasmuch as the Comptroller does not have such power, the order of Special Term should be reversed and the motion to quash the subpœna granted.

BOTEIN, P. J., and STEUER, J., concur with STEVENS, J.; EAGER, J., dissents in opinion in which BREITEL, J., concurs.

Order, entered on February 26, 1965, affirmed, without costs or disbursements to either party.