(April 15, 1986)

■ ALOUETTE FASHIONS, INC., et al., Respondents, v CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Defendants, and CITY OF NEW YORK et al., Appellants. MILLIKEN & CO. et al., Respondents, v CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Defendants, and CITY OF NEW YORK, Appellant.—Order, Supreme Court, New York County (Edward J. Greenfield, J.), entered September 25, 1984 in the *Alouette* action, which granted plaintiffs' motion to quash subpoenas, affirmed, without costs.

Order, Supreme Court, New York County (Edward J. Green-

field, J.), entered August 7, 1984 in the *Alouette* action, which granted plaintiffs' motion for a protective order and vacated the Comptroller's demands for examination, modified, on the law, to the extent of requiring plaintiffs to submit to such examination, upon oral questions only, pursuant to General Municipal Law § 50-h, within 90 days from the date of entry of this court's order, and otherwise affirmed, without costs.

Order, Supreme Court, New York County (Edward J. Greenfield, J.), entered August 7, 1984 in the *Alouette* action, which granted plaintiffs' motion to strike the defendant City of New York's affirmative defense of the failure of the plaintiffs to submit to an examination pursuant to General Municipal Law § 50-h and denied defendant City of New York's motion to dismiss the complaint, modified, on the law, to the extent of denying plaintiffs' motion and reinstating the affirmative defense and granting defendant's motion to dismiss the complaint as to all plaintiffs except Alouette Fashions, Inc., George Sottiriou, Edith Roman Associates, Me & Teddy McGee, Inc., Superior Locksmith Corp., Roman Managed Lists, Inc., and Stevez Bros. Electronics, without prejudice to recommencement of the action within 30 days after the completion of the Comptroller's examination, where not yet held, or within 30 days from the date of the entry of this court's order with respect to any claimants who have already submitted to, and completed, such examination, and said order is otherwise affirmed, without costs.

Order, Supreme Court, New York County (Edward J. Greenfield, J.), entered September 18, 1984 in the *Milliken* action (127 Misc 2d 601), which granted plaintiffs' motion to quash subpoenas, affirmed, without costs.

The two actions herein seek recovery for property damages suffered by 109 plaintiffs (39 in the *Alouette* action and 64 in the *Milliken* action) as a result of a city water main break at 7th Avenue and 38th Street, on August 10, 1983, and the ensuing electrical fire at the Consolidated Edison substation and transformer vault at that location with a resultant three-day blackout of the area commonly known as the "garment center", extending from 30th Street to 42nd Street, between 6th and 7th Avenues. Plaintiffs in these actions represent approximately a third of the more than 300 parties who have filed claims against the city in connection with this occurrence.

### THE *ALOUETTE* ACTION

Seven of the plaintiffs in the *Alouette* action filed notices of

claim in September 1983 and commenced the action by service of a summons on October 18, 1983. The other 32 plaintiffs filed their notices of claim between October 28, 1983 and November 14, 1983. A supplemental summons on their behalf was served on the city on January 13, 1984 and on that same day a complaint was served on behalf of all 39 plaintiffs.

The demands for examination that are here in issue were served by the Comptroller of the City of New York on the first seven plaintiffs in November 1983, a time subsequent to the commencement of their action. Similar demands were sent to the other 32 plaintiffs between November 22 and December 15, 1983, in each instance before the action had been commenced on behalf of the particular claimant and within 90 days of the filing of that claimant's notice of claim. These demands, stated to be pursuant to Administrative Code of the City of New York § 93d-1.0, provided for oral examination under oath of the particular claimant and also contained an extensive request for the production of various documents, including schedules of computation of damages, financial statements and tax returns for a three-year period, insurance policies, loan applications, and "[a]ll other documentation".

The plaintiffs moved for a protective order to vacate these demands for examination, asserting that a demand for such examination was inoperative after commencement of the action and further alleging that the detailed documentation here requested was a calculated and improper attempt to harass the claimants.

While the motion for a protective order was pending, the municipal defendants served an amended answer asserting as an affirmative defense that plaintiffs had failed to comply with the condition precedent of submitting to an examination as required by General Municipal Law § 50-h (5). Upon plaintiffs moving to strike this affirmative defense, the municipal defendants cross-moved for dismissal of the complaint.

Thereafter, the Comptroller of the City of New York served subpoenas duces tecum on the plaintiffs demanding the production of extensive records (similar to those demanded in the earlier notices for examination). Plaintiffs moved to quash the subpoenas and the city cross-moved to enforce them, arguing that the Comptroller's authority to issue these subpoenas derived from New York City Charter § 93 and Administrative Code § 93d-1.0.

We turn first to Special Term's decision dated August 2, 1984, granting the motion to strike defendant city's affirmative defense that "[p]laintiffs failed to submit to an examination prior to the commencement of this action as provided in § 50-h of the General Municipal Law" and denying the city's similarly grounded cross motion for dismissal of the complaint. That decision is based upon Special Term's conclusion that a notice of a "Comptroller's hearing" pursuant to section 50-h must be given to the claimant "within 30 days of receipt of claim by defendant in order to prevent commencement of an action pursuant to General Municipal Law [§ 50-i]" and that once 30 days have elapsed defendant may not limit plaintiffs' right to commence an action by making a demand for such hearing. Consistent with other language in that decision which appears to hold untimely any notice of examination which is served more than 30 days after the notice of claim is filed, Special Term contemporaneously granted plaintiffs' motion for a protective order and vacated all of the Comptroller's demands for examination. Its decision in that regard merely notes that the defendant "may proceed with examinations pursuant to CPLR."

Special Term misapprehended the import of the relevant statutory provisions governing the time frames applicable to examinations of claimants by a municipality in relation to the claimants' right to commence an action. General Municipal Law §§ 50-h and 50-i must be read together and in harmony to give meaning and effect to both provisions in order to fully carry out the legislative intent underlying their enactment. Section 50-h grants the city a period of 90 days from the date of the filing of the notice of claim within which to serve a demand for examination of the claimant and also provides (in subd [5]) that *once a demand for examination has been served, no action shall be commenced* unless the claimant has complied with the demand for examination. Section 50-i, on the other hand, permits an action to be commenced by the claimant against the municipality provided that three conditions are met—i.e., that a notice of claim has been timely filed, that 30 days have elapsed since the service of such notice and that the action is commenced within one year and 90 days after the occurrence on which the claim is based. Nowhere in section 50-i is there a requirement that claimant shall have complied with a demand for examination prior to commencing suit.

A reading of the two sections together makes clear that a

claimant may not, under any circumstances, commence a suit against the city within 30 days after the filing of a notice of claim, but can do so thereafter provided that no demand for an examination has yet been served by the city. Contrary to the city's assertion, section 50-h does not create a 90-day waiting period before a party can commence an action. To so construe that section would be to ignore and render meaningless the 30-day waiting period specified in section 50-i. Indeed, there is nothing in section 50-h itself, so heavily relied upon by the city, which creates any 90-day mandatory waiting period before a claimant can commence an action. That section addresses the issue of commencement of the action (in subd [5]) only under circumstances "[w]here a demand for examination has been served".

A reading of sections 50-h and 50-i in tandem indicates that, where the city's demand for examination has not yet been served, a claimant may properly institute an action against the city more than 30 days and less than 90 days after the filing of the notice of claim even though no Comptroller's hearing has been held. This does not mean, however, as plaintiffs urge, that once the action is commenced, the city is foreclosed from pursuing that hearing. Section 50-h grants the city 90 days within which to demand an examination and it is entitled to that full period within which to make its demand, and to thereafter hold that hearing separate and distinct from any rights to discovery under the CPLR, whether the action has been commenced or not. (See, *Franklin Socy. Fed. Sav. & Loan Assn. v City of New York,* 66 Misc 2d 675; *Bergman v Town of Hempstead,* 61 Misc 2d 149.) Of course, if the demand has been served within the 90-day period at a time when no action has yet been instituted, the claimant may not thereafter commence an action until the demand has been complied with.

Accordingly, we find that the action was properly commenced on behalf of the seven plaintiffs who filed their notices of claim in September 1983 and served the summons on October 18, 1983, before the city served a demand for examination. As to these seven plaintiffs—i.e., Alouette Fashions, Inc., George Sottiriou, Edith Roman Associates, Me & Teddy McGee, Inc., Superior Locksmith Corp., Roman Managed Lists, Inc., and Stevez Bros. Electronics—we affirm the order of Special Term striking the city's affirmative defense of failure to submit to an examination prior to commencement of the action and denying the city's cross motion to dismiss the

complaint. However, we also hold that these plaintiffs must submit to a 50-h hearing, pursuant to the demand for such examination, within 90 days from the date of this order.

As to the other 32 plaintiffs, on whose behalf the action was not commenced until after demands for examination were served, the order of Special Term is reversed and the complaint is dismissed. However, we do so without prejudice to these plaintiffs recommencing the action within 30 days after completion of the Comptroller's hearing, recognizing that in dismissing the complaint we are invoking a technical procedural requirement and are not rendering a final judgment on the merits. In that regard, it may be noted that for those plaintiffs whose actions may now be time barred, a six-month extension of the Statute of Limitations is available under CPLR 205 (a). *(De Ronda v Greater Amsterdam School Dist.,* 91 AD2d 1088.)

Although it is not clear from the record before us, the parties have claimed in the briefs that during the pendency of these proceedings, certain plaintiffs have already submitted to oral examinations. As to any such plaintiffs, the dismissal of the complaint for failure to comply with the condition precedent is affirmed, but without prejudice to recommencement of the action within 30 days from the date of this order.

We turn next to the propriety of the requests for the production of various documents which are contained in the Comptroller's demands for examinations. Since the plaintiffs' motion for a protective order was granted to the extent of vacating these demands in their entirety on the basis of untimeliness, Special Term did not reach the issue of whether plaintiffs should be required to produce at their examinations the extensive and detailed documentation sought in the demands. We find that such broad and extensive requests for documentation are not properly included in a Comptroller's demand for examination. Administrative Code of the City of New York § 93d-1.0 authorizes the Comptroller to investigate claims by examining the person presenting the claim upon oral questions only. General Municipal Law § 50-h (1) similarly provides that such "examination shall be upon oral questions unless the parties otherwise stipulate and may include a physical examination of the claimant". This language is an effective limitation on disclosure. The statute must be strictly construed to limit disclosure, at this stage, to the types of examinations enumerated therein and a wide-ranging request for production of documents, such as was here made,

is outside the contemplation of the statute and cannot stand. *(Matter of Ferris v Johnson,* Sup Ct, Onondaga County, Dec. 28, 1984, Lynch, J., *affd on opn below* 115 AD2d 309 [4th Dept 1985].) As was aptly noted in *Matter of Ferris,* "Section 50-h has been strictly construed to not incorporate the discovery provisions of the Civil Practice Law and Rules" (citing, *inter alia, Matter of Murphy v Board of Educ.,* 74 AD2d 874).

It must be noted that the initial hearing to which a municipality is entitled pursuant to General Municipal Law § 50-h is not designed to duplicate the broad and comprehensive method of obtaining disclosure provided for in the CPLR. The purpose of the hearing, as a supplement to the notice of claim, is to afford the city an opportunity to early investigate the circumstances surrounding the accident and to explore the merits of the claim, while information is readily available, with a view towards settlement. Toward that end, the examination of witnesses upon oral questions, as specified in the statute, is sufficient. Once the action has been commenced, however, the broad panoply of pretrial disclosure proceedings pursuant to CPLR article 31 is available "to advance the function of a trial to ascertain truth and to accelerate the disposition of suits". *(Rios v Donovan,* 21 AD2d 409, 411.) CPLR article 31 provides for liberal discovery procedures which require parties and witnesses to shed light on all relevant evidence and information before trial so as to prevent surprise at it. To achieve that goal, the production of documents, such as requested here, is permissible, but only after an action has been commenced and pursuant to the relevant CPLR procedures. While those procedures are not available to the city in the course of the section 50-h hearings here in issue, the city is, of course, free to fully utilize all the disclosure mechanisms of the CPLR once the action is initiated.

With respect to the subpoenas duces tecum issued by the Comptroller, we affirm Special Term's granting of the motion to quash these subpoenas. The city claims that the authority of the Comptroller to issue subpoenas duces tecum is derived from the Comptroller's power to investigate and settle claims against the city and audit finances and conduct examinations and administer oaths in connection therewith. (NY City Charter § 93; Administrative Code of City of New York § 93d-1.0.)

It has been held that the Comptroller has the power to issue subpoenas duces tecum when investigating the *finances* of the city, arising from his power to audit claims arising under contracts. *(E.g., Matter of Goldin v Greenberg,* 49 NY2d 566;

*Matter of New York World's Fair 1964-1965 Corp. v Beame,* 22 AD2d 611, *affd* 16 NY2d 570.) We find no authority, however, for the extension of this power to audit and subpoena books and records to situations where the Comptroller is investigating a negligence claim in tort against the city. *(See, Matter of Comptroller of City of N.Y. [Greenberg],* 181 Misc 860, 862.)

The authority of a governmental body to issue subpoenas in a nonjudicial proceeding is derived from a specific statutory grant of power in pursuance of that body's function. *(See, Matter of Irwin v Board of Regents,* 27 NY2d 292.) The power to utilize a subpoena is a vital auxiliary in the enforcement of the investigative power of the issuer. In this context, however, the commanding instrument of a subpoena is available only in conjunction with the legitimate means by which the nonjudicial body is authorized to conduct its investigation and in furtherance of the relevant goals of that inquiry.

In this case, the power of the Comptroller to examine claims derives from both Administrative Code of the City of New York § 93d-1.0 and General Municipal Law § 50-h. These statutes empower the city to hold hearings upon oral questions only. As such, the Comptroller is empowered to issue subpoenas ad testificandum but not subpoenas duces tecum.

Nor can we find that the powers granted the Comptroller by New York City Charter § 93 authorize him to issue these subpoenas. Subdivision (g) of that section grants the Comptroller the power to settle and adjust all claims against the city, but it does not grant any investigatory or subpoena powers. While subdivision (c) grants the Comptroller the power to audit financial transactions of the city, this cannot be construed as granting the power to audit the books and records of a claimant seeking money damages in a negligence suit against the city. The power granted to the Comptroller by subdivision (b) to investigate all matters relating to the finances of the city including, without limitation, the performance of contracts of the city, has been held to allow the Comptroller to issue subpoenas duces tecum when auditing a Board of Education transportation contract *(Matter of Goldin v Greenberg, supra; Parochial Bus Sys. v Goldin,* 75 AD2d 568) or investigating transactions with a contractor *(Matter of New York World's Fair 1964-1965 Corp. v Beame, supra).* These, however, are clearly situations involving finances pursuant to contract and must be distinguished from the settlement or adjustment of a tort claim pending against the city, which is

not governed by subdivision (b). *(Matter of Comptroller of City of N. Y. [Greenberg], supra.)*

### THE *MILLIKEN* ACTION

In the *Milliken* action, where all the plaintiffs have submitted to oral examinations, the only question before us is the motion to quash subpoenas similar to those served in the *Alouette* action.

For the same reasons as in *Alouette (supra),* we affirm the order of Special Term granting the motion to quash the subpoenas. Concur—Murphy, P. J., Lynch and Ellerin, JJ.

Ross and Asch, JJ., dissent in part in a memorandum by Asch, J., as follows: I agree with the majority in their interpretation of General Municipal Law §§ 50-h and 50-i to allow institution of an action against the city where the city's demand for examination has not yet been served, after the expiration of 30 days after the filing of a notice of claim. I further agree that the commencement of an action does not foreclose the city from demanding an examination within the 90-day period after the filing of the notice of claim. However, I disagree with the holding that the requests for documentation are not properly included in a Comptroller's demand for examination. The majority's reliance on the statutory language that such examination shall be upon "oral questions" *(see,* General Municipal Law § 50-h; Administrative Code of the City of New York § 93d-1.0) to limit disclosure is misplaced. The use of the phrase "oral questions" merely contrasts with the written question format *(see,* CPLR 3108), which is not to be used. Thus, in an analogous situation, the authorization of depositions on oral questions encountered in CPLR 3107 does not exclude a notice to produce documents under CPLR 3111.

In addition, I disagree with the majority's affirmance of the order of Special Term quashing the subpoenas duces tecum issued by the Comptroller. Under New York City Charter § 93 and Administrative Code §§ 93-1.0 and 93d-1.0, as well as General Municipal Law § 50-h, the Comptroller is vested with the power to investigate all matters relating to or affecting the finances of the city and to audit and adjust all claims against the city. In conjunction with that power, he can issue a subpoena duces tecum for the production of the books and records of claimants *(see, Matter of New York World's Fair 1964-1965 Corp. v Beame,* 22 AD2d 611, 613, *affd* 16 NY2d

570; *Matter of Goldin v Greenberg,* 49 NY2d 566, 572; *Parochial Bus Sys. v Goldin,* 75 AD2d 568, *affd* 53 NY2d 777).

It is the Comptroller's function under the law "to investigate all matters relating to or affecting the finances of the city" (NY City Charter § 93 [b]), "[to] audit financial transactions of the city including vouchers, warrants and payrolls" (§ 93 [c] [1]), "to audit all vouchers before payment for availability of funds" (§ 93 [e]), and "to settle and adjust all claims in favor of or against the city" (§ 93 [g]). In connection with the exercise of these powers, the New York City Charter and the Administrative Code empower the Comptroller to require the attendance of witnesses and to examine and take testimony under oath (NY City Charter § 93 [b], [g]; Administrative Code § 93d-1.0). General Municipal Law § 50-h (1) empowers the Comptroller to compel the attendance of claimants and examine them under oath "relative to the occurrence and extent of the injuries or damages".

The general grant of powers to the city under the General City Law includes the power "to regulate, manage and control its property and local affairs" (§ 19), "[t]o investigate and inquire into all matters of concern to the city * * * and to require and enforce by subpoena the attendance of witnesses" (§ 20 [21]) and "[t]o exercise all powers necessary and proper for carrying into execution the powers granted to the city" (§ 20 [23]).

In *Matter of New York World's Fair 1964-1965 Corp. v Beame (supra,* p 617), this court held that the power given the city to compel by subpoena the attendance of witnesses at an investigation into matters concerning the city under General City Law § 20, "when read in conjunction with section 93 of the New York City Charter, setting forth the powers and duties of the Comptroller, with the power to investigate matters relating to the finances of the city, including the power to *require* the attendance of witnesses and take testimony under oath, clearly vests a power of *subpoena ad testificandum* in the Comptroller [citation omitted]." It further held that this power to subpoena witnesses necessarily includes the power to issue a subpoena duces tecum for the production of books and records in proper cases, reasoning that: "Because of the complexity and infinite detail involved in an investigation of this nature, and of investigations when necessarily undertaken by the Comptroller, a bare power of subpoena without the power to issue a subpoena duces tecum to require the production of books and records for use in an examination of a witness in a

proper case, would be useless. It will not be presumed that the Legislature in enacting section 20 of the General City Law, or New York City in its charter, engaged in an exercise in futility." *(Supra,* at p 617; *accord, Matter of Goldin v Greenberg, supra; Parochial Bus Sys. v Goldin, supra.)*

The reasoning of the court in *World's Fair (supra)* is not limited, as asserted by the majority, to investigations of contractual matters. The basis of the court's holding was that the power to subpoena books and records arose out of the complex and infinitely detailed . nature of the investigation and the need for the books and records, not from the fact that a contractual relationship was involved (22 AD2d, at p 617).

The Comptroller is empowered to investigate *all* matters affecting city finances or involving the expenditure of city funds (NY City Charter § 93 [b]; General City Law § 20 [21]) and to investigate for the purpose of settling and adjusting *all* claims against the city. (Administrative Code §§ 93-1.0, 93d-1.0; NY City Charter § 93 [g].) There is nothing in those statutes or the reasoning in *World's Fair Corp. (supra)* and *Goldin v Greenberg (supra)* prohibiting the application of those powers with respect to tort claims. The power to investigate and audit does not exclude tort matters and the power to subpoena granted in connection with the exercise of that power is not so limited. *(See, Pulitzer v City of New York,* 48 App Div 6; *Matter of Lattinville v Ereth,* 175 Misc 1076, 1079-1080 [Sup Ct, Monroe County 1941] [the power of the auditor under the Charter of the City of Rochester to investigate "any claim" was "all embracing" and included both contract and tort claims and the power to subpoena in connection therewith].)

The claims asserted against the city herein are in connection with a power blackout in the garment center in 1983. They are commercial in nature (i.e., lost future business and profits). Like the matters under investigation in *World's Fair (supra),* they involve multiple and complex details and are susceptible of proof only by analysis and comparison of the business and sales records of the claimants over a several-year period.

It appears that the sheer numbers and monetary amount of the blackout claims ($1.5 billion) directly and substantially affect the finances of the city. Without the audit of the books and records supporting those claims, which are both detailed and highly speculative in nature, the Comptroller cannot

properly evaluate the merits of these massive claims or the risk posed to the finances of the city or initiate any policy or settlement proceedings with respect to those claims.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROLANDO ACEVEDO, Appellant.—Judgment, Supreme Court, New York County (Carol Berkman, J.), rendered on April 5, 1984, unanimously affirmed.