Kenneth J. Frank Corporation Counsel City of Binghamton City Hall Government Plaza
Dear Mr. Frank:
You have requested an opinion regarding whether a majority of the common council is authorized to issue subpoenas to local not-for-profit corporations that have an insignificant or no financial or contractual relationship with the City. You have explained that the common council is considering issuing subpoenas to local not-for-profit corporations to obtain information regarding the treatment of sex offenders in the City.
Your inquiry presents two distinct legal questions — first, whether the City may issue subpoenas to not-for-profit corporations that do not relate to business these corporations have with the City, and second, if so, whether a majority of the common council can exercise this power. As explained more fully below, we are of the opinion that the City may under some circumstances issue subpoenas to non-City entities; that the common council may grant itself the authority to investigate and issue subpoenas; and that this power, if embodied in the common council, must be exercised by an act of a majority of the whole common council unless a different voting strength is provided by other law.
Analysis
It appears from your letter that the subpoenas would not be issued in the course of an investigation of city employees or *Page 2 
departments. Therefore, the authority to issue subpoenas granted the common council by Second Class Cities Law § 40, authorizing the common council to investigate city officers and departments and issue subpoenas for that purpose, is inapplicable.[1]
Authority for the City to issue subpoenas is also conferred by General City Law § 20. Relevant to the question you pose, that statute provides that, "[s]ubject to the constitution and general laws of this state, every city is empowered . . . [t]o investigate and inquire into all matters of concern to the city or its inhabitants, and to require and enforce by subpoena the attendance of witnesses at such investigations." General City Law § 20(21). Thus, that section authorizes the city to issue subpoenas only in the course of investigating a "matter of concern to the city or its inhabitants."
A matter is ordinarily "of concern to the city or its inhabitants" when the City has a financial or contractual relationship with the subject of the subpoena. For example, in New York World's Fair 1964-1965Corp. v. Beame, 22 A.D.2d 611 (1st Dep't),aff'd, 16 N.Y.2d 570 (1965), the court upheld a subpoena issued to a corporation by the city comptroller. The comptroller was conducting an investigation with respect to the performance of a contract between the city and the corporation. The contract required the corporation to restore certain city property and to pay to the city the net revenue derived from the World's Fair. The court concluded that the transactions of the corporation under these circumstances were "a matter of genuine concern to the city." 22 A.D.2d at 616-17.
A financial or contractual relationship with the City is not, however, required by either the language of General City Law § 20(21) or by judicial precedent. Matters affecting the well-being of a city's residents may be matters of concern to the city without implicating a direct financial relationship between the city and a third party. For example, a city may issue a subpoena *Page 3 
to gather information needed to decide whether to enact local legislation. "Municipal affairs include conditions affecting every department and the entire population of the City, not alone employees. . . . The right to investigate for the purpose of enacting laws implies the right to obtain information upon any matter which may become the subject of a law." Frank v. Balog, 189 Misc 1016, 1019 (Sup. Ct. Westch. County), aff'd, 272 A.D. 941 (2d Dep't 1947).
In Dairymen's League Coop. Ass'n v. Murtagh, 274 A.D. 591
(1st Dep't 1948), aff'd, 299 N.Y. 634 (1949), the court upheld the authority of the New York City Commissioner of Investigation to issue a subpoena in an investigation of milk prices, partly because the city purchased a significant amount of milk itself for use in its institutions and "also because the sale and distribution of milk is of major importance to the health and well-being of the people of the city. The distribution of milk is a business affected with a public interest."Id. at 593-94. The court found that public interest sufficient to support a subpoena to the Dairymen's League calling for the League's records showing which customers had been charged less than the listed price for milk, and the amount and price of milk sold to them.
Similarly, in Fuentes v. Fishel, 44 Misc. 2d 943 (Sup.Ct. N.Y. County 1964), in considering an application to quash subpoenas issued by the New York City Commissioner of Investigation to a not-for-profit corporation, the court concluded that the subject of the Commissioner's investigation was a matter of concern to the city sufficient to support the subpoenas. The commissioner was investigating both the use of city funds by the not-for-profit corporation and whether employees of the corporation had "instigated or advocated disregard for legally-constituted authority or attempted to indoctrinate beneficiaries of [its] program with a philosophy of political action alien to the form provided for by the Constitutions of the United States and the State of New York." Id. at 945. The court held that both the use of city funds and the advocacy of alien political doctrine were proper matters for investigation, as each was "of vital concern to the city and its inhabitants and affects the best interests of the city." Id. at 946.
Therefore, the fact that the City wishes to issue subpoenas to not-for-profit corporations that have no significant financial or contractual relationship to the City does not by itself invalidate such subpoenas. We note that in a recent proceeding relating to subpoenas issued by a single member of the City's common council to investigate the treatment and housing of sex offenders by local charitable organizations, the court "acknowledge[d], as do all the *Page 4 
parties to this proceeding, that the subject of the subpoenas duces tecum here — issues relating to the housing and/or treatment of convicted sex offenders — is one of great public concern and interest."Matter of Massar, 2007 N.Y. Misc. LEXIS 6159, **6 (Sup.Ct. Broome County, Aug. 30, 2007) (subpoenas issued by individual council member not authorized).
The grant of subpoena power in General City Law § 20(21) does not explicitly include the authority to issue subpoenas duces tecum. The power to require and enforce by subpoena the attendance of witnesses at an investigation into matters of concern to the city has been held, however, to authorize a city to issue a subpoena duces tecum as a power necessarily implied by this grant of authority under at least some circumstances. See New York World's Fair 1964-1965 Corp. at 617;Kilgallon v. City Council of Troy, 53 A.D.2d 976, 978 (3d Dep't 1976) ("We cannot say that the council is without authority to issue a legislative subpoena [for the production of documents], for such an act is in furtherance of the general power of inquiry conferred by the law of the State (General City Law § 20)"); cf. General City Law § 20(23) (granting city power to exercise all powers necessary and proper for carrying into execution the powers granted to city). As the court inNew York World's Fair 1964-1965 Corp. explained, "Because of the complexity and infinite detail involved in an investigation" such as into the transactions of the World's Fair corporation, "a bare power of subpoena without the power to issue a subpoena duces tecum to require the production of books and records for use in an examination of a witness in a proper case, would be useless." 22 A.D.2d at 617.
Therefore, we conclude that the power to issue subpoenas under General City Law § 20(21) may authorize the issuance of subpoenas to not-for-profit corporations that do not have a significant financial or contractual relationship with the City if the City is investigating a matter of concern to the City or its inhabitants.[2] We are of the further opinion that this authority may encompass the authority to issue subpoenas duces tecum. *Page 5 
We turn next to the question of who may exercise this power on behalf of the City. General City Law § 23 provides that the powers granted by article 2-A of the General City Law "are to be exercised by the officer, officers or official body vested with such powers by any other provision of law or ordinance. . . ." General City Law § 23(1). In the absence of any provision of law or ordinance establishing by whom a power is to be exercised, "the common council . . . of the city shall . . . have power by ordinance to determine by whom and in what matter and subject to what conditions said power shall be exercised." Id. § 23(2). In the event that no law or ordinance already designates the officer or body to exercise this power — this might, for example, already be addressed in the city charter, see Matter of Massar, 2007 N.Y. Misc. LEXIS 6159 at **8 — we believe that the common council may establish by ordinance that the power to require and enforce by subpoena the attendance of witnesses at an investigation into matters of concern to the City resides in itself, rather than some other officer or official body.
If in fact the common council establishes itself as the proper body to investigate matters of concern to the City or its inhabitants, we note that section 41 of the General Construction Law requires that, whenever three or more public officers are given a power, that power must be exercised by "not less than a majority of the whole number." For the purpose of this provision, "whole number" is to be construed to mean the total number that the council would have were there no vacancies and were none of the members disqualified from acting. Id. This section applies "to every statute unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended," id. § 110, and has been applied to city common councils. See, e.g., Op. Att'y Gen. (Inf.) No. 2001-6. Therefore, unless other law provides otherwise, we believe that the power to investigate into matters of concern to the City or its inhabitants, if established in the common council, must be exercised by a majority of the whole council.
We note that a subpoena may be challenged on a variety of grounds. A non-judicial subpoena duces tecum may be challenged, for example, on the grounds that it subjects the witness to harassment or that the requested documents are not reasonably related to the subject matter under investigation or the public purpose to be served. Myerson v. LentiniBros. Moving Storage Co., 33 N.Y.2d 250, 256 (1973). A subpoena issued by a local official to a state agency may be unenforceable as an unauthorized interference in matters of state policy. See Board ofEducation of New York v. Goldin, 94 Misc. 2d 574 (Sup.Ct. Kings County 1978), aff'd, 72 A.D.2d 603 (2d Dep't 1979); Grills v. Giambra,114 Misc. 2d 571 (Sup.Ct. Erie County 1982) . Therefore, our conclusion that *Page 6 
the City may exercise the power to investigate matters of concern to the City or its inhabitants by issuing subpoenas to non-city entities should not be read as validating any particular subpoena that the City may issue.
In summary, we conclude that a city's authority to issue subpoenas for the testimony of witnesses may extend to non-city entities in the course of the city's investigation into matters of concern to the city or its inhabitants, and that in at least some circumstances this authority encompasses the authority to subpoena documents. We further conclude that, in the absence of other law providing otherwise, this authority may be exercised by the common council by a vote of a majority of the whole council, if the council has previously adopted an ordinance designating itself as the official body vested with this power.
The Attorney General issues formal opinions only to officers and departments of state government. Thus, this is an informal opinion rendered to assist you in advising the municipality you represent.
Very truly yours,
KATHRYN SHEINGOLD Assistant Solicitor General In Charge of Opinions
[1] We note that a subpoena issued to a non-city entity under this authority may be valid if issued in the course of an investigation of city employees or departments. See Matter of Edge Ho Holding Corp.,256 N.Y. 374 (1931) (upholding subpoena issued by city commissioner of accounts to non-city entity in commissioner's investigation into city departments' methods of condemning real property); Matter ofHirshfield, 228 N.Y. 346 (1920) (upholding subpoena issued by city commissioner of accounts to non-city individual in commissioner's investigation into accounts of the department of taxes and assessments).
[2] Whether exercise of this power is limited to the geographic area of the City is unclear. Compare Baker/Beech-Nut Corp. v.Wieloszynski, 89 Misc. 2d 256 (Sup.Ct. Onondaga County 1976) (administrative agency has no authority to serve a subpoena outside the area of the agency's jurisdiction) with Ruskin v. Brenner,60 Misc. 2d 545 (Sup.Ct. N.Y. County), aff'd, no opn., 33 A.D.2d 659
(1st Dep't 1969) (city commission could serve subpoena anywhere within state).