OPINION OF THE COURT
Kathryn E. Freed, J.
This decision/order on the motion is as follows:
In this special proceeding, petitioner the Comptroller of the City of New York petitions this court, pursuant to CPLR 2308, to compel respondent the Department of Finance of the City of New York (the DOF) to respond to a subpoena served by the Comptroller on October 9, 2013. The subpoena sought data regarding the general corporation tax (GCT) collected by the City of New York for the years 2008-2012, as well as testimony by a representative of the DOF. The DOF counterclaims to quash the subpoena. After oral argument, and after a review of the parties’ motion papers, all applicable statutes and case law, this court grants the petition and denies the DOF’s counterclaim.
Factual and Procedural Background
In January of 2013, John Liu, then Comptroller of the City of New York, began an audit regarding the DOF’s practices regarding its collection of the general corporation tax. In April of 2013, as part of the audit, the Comptroller requested GCT data for the years 2008-2012 and the DOF refused to produce the data.
On October 9, 2013, the Comptroller served the DOF with a subpoena for testimony and documents in furtherance of the audit. The subpoena directed that a representative of the DOF appear and give testimony on October 23, 2013. It also required the DOF to produce GCT data for the calendar years 2008-2012. The subpoena served by the Comptroller was accompanied by a proposed confidentiality agreement. (Petition exhibit A.)
On October 23, 2013, the DOF advised the Comptroller that it would not comply with the subpoena. (Petition exhibit B.) In *405 refusing to comply, the DOF, relying on a 1991 opinion of the Corporation Counsel of the City of New York (1991 Ops Corp Counsel NY City No. 10-91, 1991 WL 786982) (Opinion 10-91), stated that “the tax secrecy laws prevent [the DOF] from producing the subpoenaed documents and giving testimony with respect thereto.” (Petition exhibit B.)
In Opinion 10-91, Corporation Counsel wrote, inter alia, as follows:
“Authority for the Comptroller to audit agencies is found in City Charter § 93 (c), which provides in relevant part:
“The [C]omptroller shall have power to audit all agencies, as defined in subdivision two of section eleven hundred fifty . . . [and] shall be entitled to obtain access to agency records required by law to be kept confidential, other than records which are protected by the privileges for attorney-client communication, attorney work products, or material prepared for litigation, upon a representation by the [C]omptroller that necessary and appropriate steps will be taken to protect the confidentiality of such records.
“The authority of [the Comptroller] to audit [the DOF] is not at issue. Neither Charter § 93 nor the secrecy provisions of the tax laws exempts [the DOF] from review, and the Comptroller may audit it and the procedures used by it to administer the tax laws under its jurisdiction to the full extent permitted by law.
“The more narrow question we are presented with here is whether the Comptroller’s Charter power to obtain access ‘to agency records required by law to be kept confidential’ entitles [him] to examine tax return information that is otherwise protected from disclosure by virtue of the secrecy provisions contained in the tax laws administered by the City. . . .
“Authority for the City to impose taxes other than real property taxes must be provided by the State Legislature. The [GCT was] adopted by the City pursuant to Chapter 772 of the Laws of 1966 [and] [t]his enabling legislation sets forth with great specificity the terms under which such taxes may be imposed and administered. Section 1 of Chapter 772 *406 states that the provisions of any local law imposing the taxes authorized by that chapter must be ‘substantially’ the same as those contained therein. “Sections 90 and 148 of Chapter 772 provide:
“If any provision of this chapter is inconsistent with, in conflict with, or contrary to any other provisions of law, such provision of this chapter shall prevail over such other provision and such other provision shall be deemed to have been amended, superseded or repealed to the extent of such inconsistency, conflict or contrariety[.]
“[A] [p]rovision[ ] identical to §§ 90 and 148 [is] found in [Administrative Code § 11-690] (Corporate Business Taxes).
“Sections 88 and 146 of Chapter 772 make confidential information contained in tax returns and reports covered by that statute. The provisions state in relevant part:
“Except in accordance with proper judicial order or as otherwise provided by law, it shall be unlawful for the [DOF] to divulge or make known in any manner the amount of income or any particular set forth or disclosed in any return or report, under this title. “These tax secrecy provisions contain exceptions authorizing the disclosure of return or report information under limited circumstances including . . . the inspection of the reports or returns of any taxpayer by the duly designated officers or employees of the city for purposes of an audit under this title or an audit authorized by the act authorizing the adoption of this title. . . .
“When the City Council adopted local legislation imposing the taxes authorized by Chapter 772, it included secrecy provisions identical to those contained in the enabling legislation. The Administrative Code secrecy provisions are set forth in . . . § 11-688 (Corporate Business Taxes). . . .
“In light of the statutory language and relevant case law, in order to obtain access to information contained in the returns or reports relating to the [GCT] . . . the Comptroller must demonstrate that [his] request falls within one of the enumerated exceptions to the secrecy provisions. [My] review of these exceptions does not indicate any authority that would permit [the DOF] to disclose such infor *407 mation to the Comptroller. As noted above, §§88 and 146 of Chapter 772 allow disclosure to duly authorized employees of the City for an audit permitted by the enabling legislation or the local law imposing the tax. However, an examination of these laws reveals nothing that would authorize the Comptroller to audit tax returns or reports. The [City] Charter specifically vests the [DOF] with responsibility for the collection and administration of taxes imposed by the City Charter, § 1504. Although the [City] Charter grants the Comptroller general authority to audit the operations of City agencies and matters relating to the finances of the City, nothing in the [City] Charter or the tax laws suggests that the Comptroller may audit tax returns or reports. . . .
“As noted above, the tax secrecy provisions permit disclosure where ‘otherwise provided by law,’ and it may be argued that [City] Charter § 93 (c), authorizing the Comptroller access to confidential information, is such a law. Charter § 93 (c) was adopted by the voters in 1989 upon the recommendation of the Charter Revision Commission. The Charter amendments proposed by that Charter Revision Commission have the force and effect of local law. Municipal Home Rule Law § 36 (5).
“It is my conclusion that the term ‘as otherwise provided by law’ used in these provisions refers to State law and does not include local laws. The phrase ‘except in accordance with proper judicial order or except as otherwise provided by law’ is found throughout the secrecy provisions contained in State tax law.
“In view of the very strong public policy in this state regarding the confidentiality of tax records, which include the imposition of criminal penalties and mandatory loss of office or employment for any person who improperly discloses return information, it is my conclusion that the Legislature did not intend to empower a local legislative body, or a charter revision commission exercising the powers of a local legislative body, to eliminate or create exceptions to its mandate that certain tax return information be kept confidential.” (1991 Ops Corp Counsel NY City No. 10-91, 1991 WL 786982, *1-4; petition exhibit B.)
*408 Thus, Corporation Counsel opined in Opinion 10-91 that the City Charter, as a local law, could not satisfy the “as otherwise provided by law” exception to tax secrecy set forth in sections 88 and 146 of chapter 772. Corporation Counsel reasoned that those sections should thus be construed as a controlling state law, and so a local law such as the City Charter could not be a “law” within the meaning of the phrase “as otherwise provided by law.”
On November 21, 2013, after the DOF refused to comply with the subpoena, the Comptroller began this special proceeding by filing a notice of petition seeking an order, pursuant to CPLR 2308, compelling the DOF to respond to the same. In its verified petition dated November 19, 2013, the Comptroller argues that, pursuant to section 93 (c) of the New York City Charter, the Comptroller has the authority to audit all city agencies and “shall be entitled to obtain access to agency records required by law to be kept confidential.”
In support of its petition, the Comptroller submits the affidavit of H. Tina Kim, the Deputy Comptroller for Audit. In her affidavit, Kim states that the information sought by the Comptroller is relevant to the audit of the DOF’s collection procedures and is necessary to test the security and reliability of the DOF’s collection of the GCT. With respect to security, Kim states that the audit seeks to ensure that the GCT information exists in a secure environment inaccessible to unauthorized users. The first test of reliability is designed to ensure that the DOF has properly calculated total liability for each filing corporation. The second test of reliability is designed to determine the thoroughness of the returns so that the Comptroller can ensure that all entities which should be filing GCT returns are in fact filing them.
In an affirmation in support of the petition, Valerie Budzik, Esq., Deputy Comptroller for Legal Affairs and the Comptroller’s General Counsel, asserts that the DOF’s refusal to comply with the Comptroller’s subpoena “frustrates the Comptroller’s ability” to exercise its authority under New York City Charter § 93 (c). Budzik stated that the DOF collected over $2,846 billion in GCT in fiscal year 2012 and $3,348 billion in fiscal year 2013. Further, she stated that any tax return information disclosed by the DOF to the Comptroller would not violate any secrecy laws since the subpoena served was accompanied by a confidentiality agreement.
*409 In its verified answer, the DOF asserted, inter alia, that the materials subpoenaed by the Comptroller were not subject to disclosure pursuant to Administrative Code of the City of New York § 11-688. The DOF also asserts an affirmative defense based on section 11-688, asserting that it could be subject to criminal penalties for disclosing the materials demanded by the subpoena. Finally, the DOF asserts as a counterclaim that the subpoena should be quashed.
Positions of the Parties
The Comptroller argues that New York City Charter § 93 (c) bestows upon him the authority to audit all city agencies and provides that he “shall be entitled to obtain access to agency records required by law to be kept confidential.”
In a memorandum of law in support of the petition, the Comptroller argues that New York City Charter § 93 (c) specifically provides that he is “entitled to obtain access to agency records required by law to be kept confidential.” He maintains that there are no confidentiality provisions in any New York State law which apply to the GCT and that the only applicable tax confidentiality provisions are set forth in the New York City Administrative Code, a local law.
The Comptroller argues that, although chapter 772 of the Laws of 1966 authorized the City to impose the GCT, that tax was not established by state law but rather by local law, codified as Administrative Code of the City of New York § 11-603, and that the confidentiality provision applicable to the GCT is set forth at Administrative Code § 11-688. Thus, asserts the Comptroller, state law does not require that tax returns be kept confidential but that the Administrative Code alone imposes that requirement. Thus, argues the Comptroller, the citations in Opinion 10-91 to the confidentiality requirements of sections 88 and 146 of chapter 772 are citations to a state law, and not to the law which actually imposes the confidentiality requirement.
In an affirmation in opposition to the petition and in support of its counterclaim, the DOF argues that the specific secrecy provisions of Administrative Code § 11-688 require the denial of the petition. The DOF further asserts that, when the state legislature amended the tax secrecy statute in the New York State franchise tax, it expressly provided for an exception to secrecy for the New York State Comptroller to access tax information for audit purposes but did not allow the same power to the City’s Comptroller.
*410 The DOF further asserts that the petition must be denied for public policy reasons, since tax secrecy encourages “voluntary and truthful tax reporting.”
In a memorandum of law in opposition to the petition, the DOF argues that when the legislature enacted enabling legislation in 1966 (L 1966, ch 772) authorizing the City to impose the GCT and providing a model act for the City to follow, there was no provision allowing the City Comptroller to examine tax returns. (See Model Act § 88, as set forth in L 1966, ch 772.) The DOF asserts that, when the GCT was initially authorized, the City was required to enact a law “substantially” similar to the Model Act and that the City enacted legislation in 1966 following the Model Act which did not contain a provision allowing the City Comptroller to examine tax returns. In 1967, the legislature amended the enabling legislation (L 1967, ch 699) to authorize the City to conform to the Model Act or to conform to article 9-A of the Tax Law and the City chose to conform to the Model Act rather than to article 9-A, which contains the exception. Further, asserts the DOF, the legislature subsequently amended the secrecy provisions in Administrative Code § 11-688 but did not amend that statute to carve out an exception for the City Comptroller.
The DOF also maintains that, in order to obtain access to information contained in tax returns relating to the GCT, the Comptroller must demonstrate that his request falls within an exception to the secrecy laws, such as an audit permitted by the enabling legislation or the local law imposing the tax. However, asserts the DOF, nothing in sections 88 or 146 of chapter 772 authorizes the Comptroller to obtain such tax returns.
The DOF further argues that regardless of whether Administrative Code § 11-688 is a state statute or city statute, the legislature did not intend to make New York City Charter § 93 (c) an “otherwise provided by law” exception to secrecy. It further argues that it does not operate without oversight, as the State Comptroller is empowered to review secret tax return information.
Further, the DOF asserts that the Comptroller has acquiesced to the enforcement of Opinion 10-91 since it has not challenged it until now.
The DOF further asserts that the secrecy provisions are intended to protect the privacy of the reporting entities while facilitating the collection of taxes by encouraging truthful self-reporting.
*411 In a reply memorandum of law in further support of the petition, the Comptroller argues that it is entitled to subpoena tax returns relating to the GCT pursuant to its broad power to investigate the City’s finances, and that it is entitled to obtain such documents unless they are subject to privilege.
The Comptroller reiterates its argument that the records are necessary for him to conduct an audit of the security and reliability, as well as the accuracy and thoroughness, of the DOF’s assessment and collection of the GCT. It further asserts that New York City Charter § 93 (c) is a “law” which otherwise provides for disclosure pursuant to Administrative Code § 11-688.
The Comptroller further asserts that the 1989 amendment to section 11-688 further establishes that it was a local statute since that amendment
“bestowed ‘state law’ status on [that statute] but only in the context of Freedom of Information Law (‘FOIL’) requests under § 87 (a) (2) of the New York Public Officers Law. Since the Legislature limited the designation of § 11-688 as a state statute to issues arising under FOIL it is thus apparent that it is a local law. Because the statute is a local law, and not a state law, City Charter § 93 (c) falls within its general exception permitting disclosure of confidential documents where ‘otherwise prohibited by law.’ ”
Further, the Comptroller asserts that, if the subpoena is not enforced, then it will not be able to exercise its powers, including the audit of each city agency at least once every four years.
Next, the Comptroller asserts that Opinion 10-91 is of no moment herein since the opinion of a municipal attorney is purely advisory and has no binding effect on the court. The Comptroller also asserts that it is not estopped from arguing that it is entitled to the records demanded by the subpoena simply because it has not previously challenged Opinion 10-91.
Legal Conclusions
Section 93 (a) of the New York City Charter allows the Comptroller to advise the Mayor and City Council “on the financial condition of the [C]ity or any phase thereof and make such recommendations, comments and criticisms in regard to the operations, fiscal policies and financial transactions of the [C]ity as he or she may deem advisable in the public interest.”
Section 93 (c) of the New York City Charter provides that
*412 “[t]he comptroller shall have power to audit all agencies, as defined in subdivision two of section eleven hundred fifty, and all agencies, the majority of whose members are appointed by [Cjity officials. The comptroller shall be entitled to obtain access to agency records required by law to be kept confidential, other than records which are protected by the privileges for attorney-client communications, attorney work products, or material prepared for litigation, upon a representation by the comptroller that necessary and appropriate steps will be taken to protect the confidentiality of such records. The comptroller shall establish a regular auditing cycle to ensure that one or more of the programs or activities of each city agency, or one or more aspects of each agency’s operations, is audited at least once every four years.”
In addition to the ability to audit city agencies pursuant to section 93 (c), the Comptroller has the “power to audit and investigate all matters relating to or affecting the finances of the [Cjity, including without limitation the . . . receipt and expenditure of [Cjity funds . . . and take the testimony under oath of such persons as the comptroller may deem necessary.” (NY City Charter § 93 [b].) The power to take testimony pursuant to section 93 (b) includes the power to subpoena documents. (See Matter of New York World’s Fair 1964-1965 Corp. v Beame, 22 AD2d 611, 617 [1st Dept 1965].)
The City Charter further provides that the Comptroller “shall . . . audit all official accounts and the accrual and collection annually of all revenues and receipts” (NY City Charter § 93 [d] [2]) and “shall audit the operations and programs of [C]ity agencies to determine whether funds are being expended or utilized efficiently and economically and whether the desired goals, results or benefits of agency programs are being achieved.” (NY City Charter § 93 [e].)
Section 93 (1) of the New York City Charter requires the Comptroller, within four months after the close of each fiscal year, to publish a statement for that year including, inter alia, “all taxes due and uncollected at the close of the fiscal year.”
Since the DOF is an “agency” as defined by New York City Charter § 1150 (2), the Comptroller has the authority to audit *413 it. Indeed, Corporation Counsel acknowledges in Opinion 10-91 that it has such authority.*
Administrative Code of the City of New York § 11-688 (1) provides:
“Except in accordance with proper judicial order or as otherwise provided by law, it shall be unlawful for the commissioner of finance, [or the DOF] . . . to divulge or make known in any manner the amount of income or any particulars set forth or disclosed in any report or return, under this chapter. . . . Nothing herein shall be construed to prohibit . . . the inspection of the reports or returns of any taxpayer by the duly designated officers or employees of the city for purposes of an audit under this chapter or an audit authorized by the act authorizing the adoption of this chapter.”
As the Comptroller asserts, New York City Charter § 93 (c) is a “law” that “otherwise provide[s]” for the disclosure of information contained in GCT returns to the Comptroller in connection with an audit. Thus, under the plain language of section 11-688, the DOF must respond to the subpoena served by the Comptroller.
Although the DOF relies on Opinion 10-91 in asserting that it cannot turn over such returns to the Comptroller, that opinion has no precedential value. “[A] legal opinion by a municipal attorney is purely advisory and, right or wrong, it is the opinion of the issuing attorney.” (Matter of Slevin v Siegel, 65 Misc 2d 3, 5 [Sup Ct, Nassau County 1970].) To hold the Comptroller “bound by all opinions of the Corporation Counsel would . . . be unwise as a matter of public policy [and] would elevate the Corporation Counsel. . . to a position of supremacy among . . . officials.” (Matter of City of New York [Beame], NYLJ, Dec. 3, 1970 at 2, col 5 [Sup Ct, NY County 1970].)
The parties have failed to cite, and this court’s research has failed to reveal, any case law addressing the issue of whether the Comptroller may obtain from the DOF tax reports or *414 returns in connection with an audit. However, Matter of McCall v Barrios-Paoli (93 NY2d 99 [1999]), a case cited by the Comptroller, supports his position that he should be permitted to obtain the tax information requested. In that case, the Court of Appeals held that the state legislature “authorized the State Comptroller to conduct performance audits of political subdivisions of the State, including the City.” (Id. at 109.) Importantly, however, it stated in dicta that “the City concedes that the State Comptroller is authorized to conduct financial audits of City agencies—a duty similarly assigned by the City Charter to the City Comptroller.” (Id.) Thus, the Court of Appeals acknowledges that the Comptroller may conduct a financial audit of a city agency such as the DOF, and it is difficult to imagine how such an audit could be conducted without the tax return information sought by the Comptroller. The said decision also refers to the “coextensive powers” of the City and State Comptrollers. (Id.)
Although the DOF correctly cites Matter of New York State Dept. of Taxation & Fin. v New York State Dept. of Law, Statewide Organized Crime Task Force (44 NY2d 575, 580 [1978]) for the proposition that
“a major ‘purpose of . . . statutory provisions prohibiting disclosure is to facilitate tax enforcement by encouraging a taxpayer to make full and truthful declarations in his return, without fear that these statements will be revealed or used against him for other purposes’ (Webb v Standard Oil Co., 49 Cal 2d 509, 513),” those provisions do not pertain here.
In Matter of New York State Dept. of Taxation & Fin. v New York State Dept. of Law, Statewide Organized Crime Task Force, the Court of Appeals refused to allow the New York State Department of Taxation and Finance to turn over individual tax returns to the Statewide Organized Crime Task Force (OCTF). Although the Court of Appeals agreed that OCTF had broad investigatory powers, it found that the public purpose served by protecting individual tax returns was of greater importance, especially where there was no relation to tax matters.
“It is also clear that the interest protected by restrictions on disclosure is not purely that of an individual in his own privacy, significant as that is. By preventing the use of compulsorily self-reported tax information in ways that could harm the reporting taxpayer, the State serves its own administrative *415 ends as well (cf. Matter of Bakers Mut. Ins. Co. of N.Y. [Department of Health of City of N.Y.], 301 NY 21 [(1950)]).” (Id. at 579-580.)
The Court of Appeals goes on to note the very limited exceptions to this rule are “those related to the marshaling of revenues.” (Id. at 581.) The Court of Appeals makes it clear that the strict limits on disclosure relate to protecting individuals from self-incrimination in order to facilitate full disclosure on returns. However, those same restrictions do not apply in this matter, where we are dealing with another agency, under the same disclosure restrictions and whose only purpose relates to the “marshaling of revenues.”
Additionally, it is clear that there are very strong public policy arguments militating in favor of disclosure of the GCT return information to the Comptroller. Specifically, as Kim stated in her affidavit in support of the petition, the information sought by the Comptroller is relevant to the audit of the DOF’s collection procedures and is necessary to test the security and reliability of the DOF’s collection of the GCT.
With respect to security, Kim explained that the audit seeks to ensure that the GCT information exists in a secure environment inaccessible to unauthorized users. The first test of reliability is designed to ensure that the DOF has properly calculated total liability for each filing corporation. The second test of reliability is designed to determine the thoroughness of the information included in the returns so that the Comptroller can ensure that all entities which should be filing GCT returns are in fact filing them.
Additionally, as Budzik stated in her affirmation in support of the petition, the DOF’s refusal to comply with the Comptroller’s subpoena “frustrates the Comptroller’s ability” to exercise its authority under New York City Charter § 93 (c). Budzik stated that the DOF collected over $2.846 billion in GCT in fiscal year 2012 and $3.348 billion in fiscal year 2013.
Therefore, Kim and Budzik have established that there are strong policy reasons militating in favor of compelling the DOF to respond to the subpoena. The information demanded would actually help to ensure that all steps possible are being taken to keep the information in the GCT returns private. It would also help to ensure that all entities which should be paying the GCT are paying it and providing all information necessary to confirm that they are paying the amounts they actually owe. It is surely in the best interests of the City to ensure that the DOF’s tax *416 collection efforts are being conducted in a thorough manner since this could potentially assist the City’s revenue raising efforts by allowing it to identify entities which should be, but are not, paying taxes, as well as entities which are not paying all taxes owed.
Public policy also dictates that the Comptroller have the ability to review GCT returns since he is an official elected by, and is thus accountable to, the citizens of the City. Therefore, the Comptroller has been selected by the people of the City to carry out the broad powers assigned to him by the City Charter.
Further, the DOF’s concerns regarding breaches of secrecy are unfounded. As noted above, the subpoena served by the Comptroller was accompanied by a confidentiality agreement setting forth in detail the numerous precautions to be taken by the Comptroller to avoid the disclosure of private information. These include redaction and encryption, as well as the destruction of flash drives, on which tax return information is to be stored, at the end of the audit.
Although the City Charter vests the DOF with the responsibility for the collection and administration of taxes imposed by the City Charter (see NY City Charter § 1504), there is no question that New York City Charter § 93 provides the Comptroller with broad authority to audit city agencies. Indeed, it is difficult to imagine how the Comptroller can publish a statement regarding “all taxes due and uncollected at the close of [each] fiscal year” (NY City Charter § 93 [1]) without obtaining access to the information demanded in the subpoena served on the DOF. Additionally, it would ill behoove the City if the City Comptroller were unable to fulfill his charter-mandated responsibilities based on a somewhat convoluted interpretation of the impact of the state enabling legislation.
Therefore, in light of the foregoing, it is hereby ordered that the petitioner’s motion to compel respondent to comply with the subpoena served by petitioner on October 9, 2013 is granted; and it is further, ordered that the respondent’s counterclaim seeking to quash petitioner’s subpoena is denied.

 The Corporation Counsel states in Opinion 10-91 that
“[t]he authority of the City Comptroller to audit the [DOF] is not at issue. Neither Charter § 93 nor the secrecy provisions of the tax laws preempts [the DOF] from review, and the Comptroller may audit it and the procedures used by it to administer the tax laws under its jurisdiction to the full extent permitted by law.” (1991 Ops Corp Counsel NYC No. 10-91, 1991 WL 786982, *1.)